# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
### Northern Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | |
| v. | CASE NO. MJG 00-CV-2602 |
| WESTVACO CORPORATION | |
| Defendant. | |

## WESTVACO CORPORATION'S [PROPOSED] RESPONSE TO THE UNITED STATES' REPLY BRIEF REGARDING THE PROPER STANDARD FOR MEASURING "PRE-CHANGE" OR "BASELINE" EMISSIONS

In its Reply Brief Regarding the Proper Standard for Measuring "Pre-Change" or "Baseline" Emissions ("Reply Brief"), the United States asserted that Westvaco Corporation "has long understood that PSD determinations must be based on an actual emissions baseline" and submits six new exhibits in support of this argument. *See* Reply Br. Exs. 12–17. These new exhibits are an attempt to show that Westvaco's determination about PSD applicability for DEP was unreasonable.

In making this argument, the Government mischaracterizes the new evidence submitted in support. These documents do not show that Westvaco was unreasonable in using "allowable emissions" for their PSD determination. Rather, these documents demonstrate that Westvaco *and the State of Maryland, Westvaco's PSD regulator*, understood that the Luke Mill's emissions cap was the appropriate starting point for pre-construction PSD review.

## ARGUMENT

In its Reply Brief, the Government cites Westvaco internal correspondence regarding a 1983 PSD applicability determination for a Crown-Zellerbach paper mill, Westvaco internal

memoranda regarding various projects at the Luke Mill in the 1990s, and correspondence between Maryland and EPA about a 1997 digester project at the mill.

The new exhibits cited in the Reply Brief do not support the Government's claim that Westvaco's PSD applicability determination for DEP was unreasonable.  As explained below, these documents are either irrelevant or confirm the reasonableness of Westvaco's calculation of pre-DEP baseline emissions by reference to the mill's source-specific allowable emissions.

1.     *1983 Correspondence between Bill Burns and Bob Dickinson.*  The Government's Reply Brief attaches a memorandum from Bill Burns, then vice-president and director of corporate environmental activities, and handwritten notes from Bob Dickinson, a former pollution abatement coordinator at Luke Mill.  Reply Br. at 14–15.[1]  According to the Government, "[t]hese documents show that Westvaco understood, as of 1983, that adding digesters would increase actual emissions and would be subject to PSD review even though there would be no change in allowable emissions."  *Id.* at 15.

---

[1]  The EPA determination that the Westvaco documents describe is the same 1983 determination that the government attached to their opening brief at Exhibit 6.  Gov't Opening Br. Ex. 6.  The Government claims that, in the 1983 determination, "EPA determined that even though the source had an emissions limit (like the Luke Mill), PSD applicability would be based on an actual emissions baseline."  Reply Br. at 14.  But this is flatly inaccurate.  The "emissions limit" described in that 1983 determination was a rate of emissions based only on recovery furnace throughput, not a total emissions limit like the SO2 cap at the Luke Mill.  Gov't Opening Br. Ex. 6 at 2 ("Ray Nye of your staff has informed my staff that this permit limit binds the recovery boiler to a level of 0.1 gr/dscf, but does not provide any discussion of the unit's operating rate.").  EPA concluded that there was no limit on the furnace operating capacity, and thus no basis for the allowable emissions limit presumption.  Instead, the recovery boiler emissions were limited only by existing digester capacity, and changing that digester capacity changed emissions.  "[S]ince the recovery boiler could not have operated at a level higher than that provided by the existing digester capacity," EPA concluded that the changes at the facility would have to go through PSD review.  *Id.* at 3.  Of further interest is that EPA concluded in this 1983 determination that BACT would not be required on the recovery furnace for changes made to the digesters, even though the recovery furnace burned waste from the digesters and particulate matter emissions from the recovery furnace would increase.  This conclusion by EPA that BACT was not required is precisely the same position Westvaco has taken in this litigation regarding the DEP; a position that DOJ has prevailed upon this Court to reject.

The Government entirely mischaracterizes these documents.  As the documents themselves describe, Westvaco analyzed EPA's determination in terms of how to define a "facility" or a "source," and not when to apply the allowable emissions presumption.  Reply Br. Ex. 14 ("[T]he crux of EPA's interpretation that PSD is applicable lies in its definition of 'stationary source.'").  The Westvaco documents go on to describe how EPA's interpretation, "[t]aken to the extreme, [] could mean that the removal of any production bottleneck that involved a physical change and would increase production enough to have a significant emissions increase, would subject the mill to PSD review."  *Id.*  In particular, these documents raise a concern about how this 1983 interpretation would impact the Covington Mill, not the Luke Mill, and the Covington Mill does not have an allowable emissions limit like the SO2 cap at the Luke Mill.  *Id.*  At no time do the documents suggest that this 1983 determination has any impact whatsoever on the application of the allowable emissions presumption to DEP at the Luke Mill.[2]

2.    *1997 Correspondence between Maryland and EPA*.  The Government also submitted a number of documents that post-dated DEP, including a series of letters between Maryland and EPA on PSD applicability for Westvaco's proposed replacement of three digesters in 1997.  Citing the 1997 letters, DOJ argues that "Westvaco . . . understood that PSD determinations must be based on an actual emissions baseline."  Reply Br. at 14.  The

---

[2]  The Government's Reply Brief at 15 plucks sentences out of the November 4, 1983 handwritten note by Bob Dickinson and attaches them together with ellipses to imply that Westvaco's argument against PSD applicability was a "weak argument that EPA would reject."  Reply Br. at 15.  Reading the selected sentences in context, however, makes it clear that the argument considered "weak" was the argument that the digesters themselves were not "pollutant emitting activities," not the argument that PSD did not apply to the DEP.  *Id.* Ex. 14 at 1.  As noted above, this handwritten note concerns the Covington Mill, not the Luke Mill.

documents, attached to the Government's Reply Brief as Exhibit 12, actually prove exactly the opposite.

It is clear from the correspondence between Maryland and EPA that, as late as 1997, both Westvaco and the Maryland Department of the Environment—Westvaco's PSD reviewing authority—considered the Luke Mill's source-specific allowable emissions cap the appropriate baseline for PSD.  EPA explained in correspondence with Maryland that EPA disagreed with Maryland's position:

> In conversations between our agencies' staff, it has been opined that Maryland has the discretion under COMAR 26.11.17.01 Definitions, B. Terms Defined, (1) Actual Emissions to consider the allowable emissions for an emissions unit to be equivalent to the actual emissions of the unit.  ***It has been further opined that Maryland has the discretion to consider Westvaco's allowable emissions limit of 66 tons/day equivalent to its actual emissions and use that as a rationale to determine that the proposed expansion at Westvaco is not subject to PSD.***  I have spoken to Deputy Director Ann Marie DeBiase and members of your staff to inform them that EPA disagrees.

Reply Br. Ex. 12 at 5 (emphasis added).[3]  Regardless of whether EPA disagreed with Maryland's interpretation of "actual emissions," the documents attached as Exhibit 12 to the Government's Reply Brief demonstrate that as of 1997, more than 15 years after the commencement of the DEP, the State of Maryland still applied the allowable emissions presumption to digester changes made at the Luke Mill.

*     *     *

---

[3]  Note also that in 1997, EPA disagreed with Maryland based on a very different rationale than the position advanced by the Government in this case, namely that source-specific allowable emissions should be used as a baseline when "an existing source . . . has been <u>out of compliance</u> for the two years preceding the date of a proposed modification".  *See* Reply Br. Ex. 12 at 5.  In contrast, the government argues here that "while the regulations permit the use of source-specific allowable emissions to make reasonable approximations of actual emissions where real data is unavailable, this provision only applies in the absence of actual emissions information."  *See* Gov't Opening Br. at 11.

The new exhibits cited in the Reply Brief do not support the Government's claim that Westvaco's PSD applicability determination for DEP was unreasonable, and in fact establish exactly the opposite. The United States has not demonstrated that the 1980 PSD regulations precluded Westvaco from calculating pre-DEP baseline emissions by reference to the mill's source-specific allowable emissions or that Westvaco was unreasonable in applying 40 C.F.R. § 52.21(b)(21)(iii) to the DEP. Because the Government has failed to make this showing, Westvaco requests that this Court find that the Luke Mill's "source-specific allowable emissions" were representative of "actual emissions" for the purpose of the pre-DEP baseline emissions calculation.

Respectfully submitted,

_____/S/_____
Raymond B. Ludwiszewski (Bar No. 14905)
rludwiszewski@gibsondunn.com
Peter E. Seley (Bar No. 013542)
pseley@gibsondunn.com
Charles H. Haake (*pro hac vice*)
chaake@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-8500
(202) 955-8500 (voice)
(202) 467-0539 (facsimile)

Andrea Bear Field
afield@hunton.com
Maida O. Lerner
mlerner@hunton.com
James D. Elliott
jelliott@hunton.com
HUNTON & WILLIAMS
1900 K Street, N.W.
Washington, D.C.  20006-1109
(202) 955-1500 (voice)
(202) 778-2201 (facsimile)

Dated: February 12, 2010

*Counsel for Defendant Westvaco Corporation*