UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---------------------------------------------------------X
UNITED STATES OF AMERICA,　　　　:
　　　　　　　　　　*Plaintiff*,　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　　　:　　Civil Action No. MJG 00 CV 2602
　　　　　　　　　　　　　　　　　　:
WESTVACO CORPORATION,　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　*Defendant*.　　　:
---------------------------------------------------------X

**NON-PARTY LUKE PAPER COMPANY'S OPPOSITION TO THE MOTION
BY PLAINTIFF UNITED STATES OF AMERICA TO JOIN LUKE AS A
PARTY DEFENDANT**

Non-Party Luke Paper Company ("LPC") respectfully submits this memorandum of law in opposition to Plaintiff United States of America's (the "government") motion, for an order joining LPC as a party defendant.

**PRELIMINARY STATEMENT**

The government filed the instant action against defendant Westvaco in August 2000, alleging that Westvaco had violated the preconstruction permitting requirements of New Source Review in connection with certain projects constructed at the Luke Mill in the 1980s. In 2005, after NewPage Corporation, the parent company of LPC, acquired various businesses from Westvaco, including the Luke Mill, the government moved on the eve of trial to join LPC as a party to this action. The Court declined to rule on the motion at that time. Now, five years later, after trial and numerous substantive decisions regarding Westvaco's potential liability, the government has suddenly decided to renew its motion to join LPC.

The government, however, has no basis to join LPC as a defendant. Neither LPC nor NewPage had any involvement with the Luke Mill until many years after the modifications

DOC ID-15242109.3

at issue. Consequently, LPC cannot be held liable for the alleged New Source Review violations that are the subject of this action. Therefore, adding LPC as a party to this action will not in any way alter the relief available to the government.

Moreover, the government's concern that LPC might not comply in the future with relief that may or may not be granted by this Court is obviously premature. There is no basis to believe that LPC will not comply with its legal obligations, if, and when, such obligations arise under its Title V permit or any relevant contractual obligations. In any event, such a concern, however misguided, does not provide the government with a legal basis to assert claims against LPC.

Accordingly, the government's motion to join LPC should be denied.

## ARGUMENT

### I.

### LPC SHOULD NOT BE JOINED TO THIS ACTION BECAUSE THE GOVERNMENT CANNOT STATE A CLAIM FOR NSR LIABILITY AGAINST LPC FOR THE VIOLATIONS ALLEGED HERE

It is LPC's understanding that the government is moving for joinder under Fed.R.Civ.P. 19(a). The government, however, cannot establish any basis for such joinder. Under Rule 19(a), a party may be joined if "in that person's absence, the court cannot accord complete relief among existing parties." Courts will not allow joinder where the moving party cannot show "why he could not obtain complete relief against [the existing party] without the presence of [the proposed party] under Rule 19(a)(1)." American General Life and Accident Ins. Co. v. Wood, 429 F.3d 83 (4th Cir. 2005).

Here, the joinder of LPC would have no impact on the relief available among the existing parties because the government cannot state a claim against LPC for the violations of the New Source Review program which are the subject of the allegations against Westvaco.

Moreover, the government's assertion that LPC might not comply with potential future relief ordered against Westvaco is premature as LPC will be bound both contractually and by virtue of its operating permit to comply with potential future equipment control requirements ordered by the Court. Because the government cannot state a claim against LPC for the violations alleged against Westvaco in this action, the government's petition for joinder should be denied.

**A. LPC Was Not an Owner or Operator of the Mill at the Time of the Alleged Violations**

In the instant lawsuit, the government asserted claims against Defendant Westvaco alleging that Westvaco violated the Prevention of Significant Deterioration (PSD) New Source Review (NSR) provisions of the Clean Air Act (CAA), 42 U.S.C. § 7475(a) (hereinafter referred to as "PSD" or "NSR") by making four major modifications to the Luke Mill between 1981 and 1991 without obtaining the requisite preconstruction permits and without installing the required Best Available Control Technology ("BACT"). United States v. Westvaco Corp., 144 F.Supp.2d 439, 441 (D.Md. 2001). Of the claims related to the four modifications, all have been dismissed with the exception of the claim regarding the Digester Expansion Program (the "DEP"), which took place from 1981-1985. Id.

LPC, a wholly-owned subsidiary of NewPage Corporation, which has no affiliation or connection to defendant Westvaco, is the current owner and operator of the Luke Mill. However, LPC was not an owner or operator of the Luke Mill at the time of the alleged modifications or even at the time the lawsuit was filed by the government against Westvaco in August 2000. See attached Affidavit of Douglas Cooper. Neither NewPage nor LPC had any interest in the Luke Mill at the time Westvaco undertook the DEP at the Mill, twenty years before NewPage acquired the company.

**B. LPC Cannot be Held Liable for Violations of NSR Allegedly Committed by Westvaco**

LPC cannot be held liable for violations of NSR allegedly committed by Westvaco at the Luke Mill decades before LPC became the owner of the Mill. There is simply no basis for the government to assert claims against a new owner for violations of NSR allegedly committed by a prior owner. See, United States v. Midwest Generation, LLC, 694 F.Supp.2d 999 (N.D.Ill. 2010) (dismissing claims alleging liability against Midwest Generation for violations of NSR by a prior owner) and New York v. Niagara Mohawk Power Corp., 263 F.Supp.2d 650 (W.D.N.Y. 2003) (dismissing claims against NRG for violations of NSR by Niagara Mohawk, the prior owner of the facilities at issue).

*1. The NSR Violation Occurs at the Time of Construction and Is Not Continuing*

Pursuant to NSR, "no major emitting facility *may be constructed*" unless it meets NSR requirements. 42 U.S.C. § 7475(a) (emphasis added). NSR requires that an owner or operator, prior to undertaking construction or modification at its facility, determine whether the modification should reasonably be expected to cause a significant increase in emissions of specified pollutants. If so, prior to construction, the owner or operator must apply for an NSR or PSD permit, depending on the National Ambient Air Quality Standards ("NAAQS") in the region, and must install modern pollution control technologies meeting either the BACT standard for PSD, or the Lowest Achievable Emissions Rate standard ("LAER") for NSR.

In the instant case, this Court has held, in an opinion that has been widely cited in numerous other NSR decisions, that based on the plain language of the rule, a violation of the NSR requirements occurs at the time of construction and is not an ongoing violation. Westvaco, 144 F.Supp.2d at 444-45. This Court noted that the NSR section of the CAA, which is entitled "Preconstruction Requirements," "clearly and unambiguously applies to the *construction* - not the *operation* - of major stationary sources." Id. at 444.

In reaching this conclusion, this Court reviewed the specific statutory provisions of NSR, including section 7475(a) and the enforcement provisions of § 7477 and found that the NSR obligations are pre-construction requirements. Specifically, this Court explained that the NSR requirements:

> must be undertaken *prior to* the construction or modification of the facility. Thus, when read in context, none of the prerequisites for obtaining a permit under § 7475(a) creates an ongoing violation. As such, violations of that provision accrue at the time of construction (or modification) but are not continuing.

Id. at 445, n.3. Along those lines, this Court noted that "[f]ederal district courts have uniformly held that preconstruction permit violations occur only at the time of the construction or modification of the emitting facility." Id. at 443.

Accordingly, this Court rejected the government's argument that each day of operation at the Luke Mill constituted a continuing NSR violation. Id. at 444. Instead, the Court ruled that the violations alleged would have occurred at the time of construction or modification only, and held that claims for civil penalties based on modifications made more than five years prior to the initiation of this action would be barred by the federal five year statute of limitations. Id. at 444-445. This holding is the law of this case.

This holding is also supported by the majority of other courts considering this issue, including the Eleventh and Eighth Circuit courts. See, e.g., Nat'l Parks and Conservation Ass'n, Inc. v. Tennessee Valley Authority, 502 F.3d 1316, 1322 (11th Cir. 2007) (holding that the line of cases by district courts, including the Westvaco decision, "persuade us" that "violations of requirements of the preconstruction permitting process do not constitute continuing violations of the Clean Air Act"); Sierra Club v. Otter Tail Power Co., 615 F.3d 1008, 1014-15, 1018 (8th Cir. 2010) (finding that the language of § 7475(a) "unambiguously indicates

that the PSD requirements are conditions of construction, not operation" so that the rules "prohibited only modification of the . . . plant without a PSD permit or BACT, not its operation"); Sierra Club v. Franklin County Power of Ill., LLC, 546 F.3d 918, 928 (7th Cir. 2008) (explaining that it "makes sense to conclude that the *last* possible moment at which a preconstruction violation occurs is 'when the actual construction is commenced, and not at some later point in time'"); Sierra Club v. Duke Energy Indiana. Inc., 2010 WL 3667002 (S.D. Ind. Sept. 20, 2010) (agreeing with the line of cases, including the Westvaco decision, that "PSD violations are not continuing in nature and accrue no later than the time at which construction is complete"); United States v. Illinois Power Co., 245 F.Supp.2d 951, 957 (S.D. Ill. 2003) (citing to the Westvaco decision, among others, and holding that the "plain language" of the NSR provisions "demonstrates that any preconstruction violation occurs when the actual construction is commenced, and not at some later point in time"); United States v. Cinergy Corp., 397 F.Supp.2d 1025, 1030 (S.D.Ind. 2005) (holding that the NSR violation did not continue after the time the construction project was completed).

In fact, based on this reasoning, courts have dismissed cases brought by private plaintiffs against owners or operators more than five years after the statute of limitations, finding that not only are the civil penalties barred but so are the claims for equitable relief. Otter Tail Power Co., 615 F.3d at 1019 (affirming dismissal of PSD claims, concluding that "because Sierra Club's PSD civil penalty claims are barred by the statute of limitations, the equitable remedies it seeks under those causes of action are barred as well"); Duke, 2010 WL 3667002 at *9-10 (finding that the concurrent remedy doctrine bars Sierra Club's equitable claims where the statute of limitations bars civil penalties).

*2. Only the Owner or Operator at the Time of the Violation Can be Held Liable under NSR*

By their very terms, the NSR provisions apply only to owners or operators who fail to obtain the requisite permits for construction or modification of a facility. Specifically, the regulatory enforcement provision provides that "any owner or operator who constructs or operates a source or modification not in accordance with the application . . . shall be subject to appropriate enforcement action." 40 C.F.R § 52.21(r)(l). Similarly, the citizen's suit provision authorizes suit "against any person who proposes to construct or constructs . . ." a facility without an NSR permit. 42 USC § 7604(a)(3). There is, on the other hand, no provision permitting enforcement against a subsequent owner or a party who continues to operate the facility after the pre-construction violation has been committed. In Cinergy, for example, the court explained held that Cinergy "cannot be liable for failing to operate according to a non-existent pre-construction permit." Cinergy, 397 F.Supp.2d at 1030.

Accordingly, courts have dismissed claims brought against new owners for alleged violations of PSD by prior owners. In Niagara Mohawk, the district court dismissed claims against NRG Energy, Inc. and numerous of its subsidiaries ( collectively, "NRG") for violations of NSR allegedly committed by Niagara Mohawk at the Dunkirk and Huntley power plants between 1982 and 1999, prior to NRG's acquisition of those plants on June 11, 1999. Niagara Mohawk, 263 F.Supp.2d at 654-5. Citing to the Westvaco decision, among others, the court found that "violations of the preconstruction requirements at 42 U.S.C. § 7475(a) are singular violations that occur at the time of construction." Id. at 668. The court explained that each requirement of section 7475(a) applies "*prior* to construction or modification of a facility, and does not constitute a continuing obligation or violation" and that there is "no liability under

the preconstruction provisions for *operating* a facility in violation of the preconstruction requirements." Id.

The Court then explained that the NSR provisions apply only to the party who seeks to construct or modify its facility. Specifically, the court held that by "its plain terms", the language of § 7475(a) "does not impose liability on any person other than the one who fails to comply with its requirements." Id. at 668-669. The Court found it to be "simply counterintuitive" to impose NSR liability "on a person for whom compliance would have been impossible." Id. at 669. Accordingly, since the NRG defendants were "after-the-fact, third-party purchasers" of the facilities, who "neither owned nor operated the Facilities at the time the modifications allegedly occurred," the court found that they "had neither the obligation nor the ability to comply with the mandates of [NSR]." Id. Because the government's allegations of NSR violations could not even potentially give rise to a claim against the NRG defendants, the claims against them were dismissed. Id.

Similarly, in Midwest Generation, the district court dismissed claims by the government alleging liability against Midwest Generation for violations of NSR by a prior owner. Midwest Generation, 694 F.Supp.2d at 1008-09. The court examined the plain language of the statute and regulations, finding them to prohibit construction without the requisite permit but not the subsequent operation of the facility without a PSD permit. Id. at 1003-04. Then, citing to numerous cases including the Westvaco decision, the court held that the violation occurs only at the time of construction. Id. at 1005-06. Accordingly, the court dismissed the complaint, finding that "Midwest Generation cannot be held liable for any construction that occurred prior to Midwest Generation's ownership of the relevant sources. . . . There is no statutory basis for holding Midwest Generation liable for ComEd's actions." Id. at 1008.

In the instant case, the government has no statutory basis to assert claims against LPC. The government alleges that Westvaco committed NSR violations many years before NewPage or LPC came to own the Luke Mill. According to <u>Niagara Mohawk</u> and <u>Midwest Generation</u>, and based upon precedent discussed above, including this Court's ruling regarding the nature of an NSR violation, LPC cannot be held liable for violations that occurred prior to its ownership of the Mill. It simply makes no sense, and there simply is no statutory basis, to impose NSR liability on LPC, a person for whom compliance would have been impossible because it had no ownership interest or control over the Mill at the time of the alleged modification.

## II.

### THE GOVERNMENT'S ASSERTION THAT IT CANNOT OBTAIN COMPLETE RELIEF ABSENT JOINDER IS PREMATURE

LPC presumes that the government is arguing that joinder is necessary because without LPC as a party, the government cannot be assured of obtaining complete relief, if any, ordered by this Court. Any such argument is premature and unfounded.

The government cannot state any reason to believe that LPC, as the current owner of the Luke Mill, will not comply with a potential remedy ordered by this Court that may affect the Luke Mill facility. LPC has and intends to continue to operate the Luke Mill in compliance with the terms of its permit and to honor its contractual obligations.

Consequently, this Court should deny the government's motion to join LPC as a defendant in this action, particularly at this late date after so many of the issues in the case have been decided.

## **CONCLUSION**

WHEREFORE, LPC respectfully requests that the government's motion to join LPC should be denied.

Dated: December 17, 2010

  /s/ Howard B. Epstein_____

Howard B. Epstein
Sami. B. Groff
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York  10022
(212)756-2000

*Attorneys for Luke Paper Company and NewPage Corporation*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

------------------------------------------------------X
UNITED STATES OF AMERICA,                :
          *Plaintiff*,                              :
                                                        :
          v.                                             :  Civil Action No. MJG 00 CV 2602
                                                        :
WESTVACO CORPORATION,                    :  **AFFIDAVIT OF**
                                                        :  **DOUGLAS K. COOPER**
          *Defendant*.                             :
                                                        X
------------------------------------------------------

STATE OF OHIO                )
                              ) ss:
COUNTY OF MONTGOMERY  )

      Douglas K. Cooper, being duly sworn, deposes and says:

      1. I am the Vice President, General Counsel and Secretary of NewPage Corporation. I make this affidavit on personal knowledge in support of non-party Luke Paper Company's opposition to Plaintiff United States of America's motion to join Luke Paper Company as a party defendant in this case.

      2. Luke Paper Company, a wholly-owned subsidiary of NewPage Corporation, is the current owner and operator of the Luke Mill, a kraft pulp and paper mill in Luke, Maryland.

      3. Defendant Westvaco Corp. owned and operated the Luke Mill until December 31, 2002, when the Luke Mill and related assets were transferred to MeadWestvaco Maryland, Inc., subsequent to the merger between Westvaco Corp. and Mead Corporation.

      4. On May 2, 2005, NewPage Corporation acquired MeadWestvaco Maryland Inc. and changed its name to the Luke Paper Company. NewPage Corporation had no ownership interest, connection or affiliation with the Luke Mill prior to May 2, 2005.

      5. In this action, the government alleges that Defendant Westvaco Corp. violated the preconstruction permit requirements of the New Source Review provisions of the Clean Air Act

DOC ID-15307022.1

in connection with projects performed at the Luke Mill from 1981-1985. Neither the NewPage Corporation nor Luke Paper Company had any interest in the Luke Mill at the time of the projects in question.

                                              Douglas K. Cooper

Sworn to me this 16th day of December, 2010

_____
Notary Public

JANICE HEFLIN, Notary Public
In and for the State of Ohio
My Commission Expires July 2, 2011

