```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

```
UNITED STATES OF AMERICA       *

        Plaintiff              *

        vs.                    *   CIVIL ACTION NO. MJG-00-2602

WESTVACO CORPORATION           *

        Defendant              *

*       *       *       *       *       *       *       *       *
```

## MEMORANDUM AND ORDER RE: MOTION TO JOIN

The Court has before it the United States' Renewed Motion to Join the Luke Paper Company as a Party Defendant [Document 261] and the materials submitted relating thereto. The Court has held a hearing and has had the benefit of the arguments of counsel.

## I.   BACKGROUND[1]

In this case, the Government seeks to have the Court impose pollution control obligations upon Defendant Westvaco Corporation ("Westvaco"),[2] operator of a kraft pulp and paper production facility located in western Maryland along the Maryland-West Virginia border (the "Luke Mill"). Specifically,

---

[1] For a detailed background on this case, see Memorandum of Decision Re: First Phase [Document 230].
[2] Reference to "Westvaco" herein is intended to include all predecessors and successors in interest to Westvaco Corporation in regard to the operation of the Luke Mill.

the Government contends that construction between 1981 and 1985 at the Luke Mill during the Digester Expansion Project ("DEP") triggered compliance with the Clean Air Act's Prevention of Significant Deterioration ("PSD") program regulations. See 42 U.S.C. § 7070-7492; 40 C.F.R. § 51.166 (1987).[3]

The instant case has been proceeding to resolution in phases herein.

The Court first found:[4]

- That the digesters and power boilers are parts of a multi-part emissions unit that was physically changed and had its method of operation changed during the DEP.

- That Power Boilers 25 and 26 were physically changed during the DEP.

- That it cannot impose BACT (best available control technology) requirements with regard to Power Boilers 25 and 26 by virtue of the Mill-Wide Expansion Program.

The Court then found:[5]

- That prior to the DEP, the Luke Mill's baseline "actual emissions" of sulfur dioxide ("$SO_2$"), as defined in the 1980 version of 40 C.F.R. § 52.21(b)(21), are equivalent to the average annual emissions rate, calculated using the emissions

---

[3] All citations to the PSD regulations, 40 C.F.R. § 51.166 and 52.21, are to the PSD regulations promulgated August 7, 1980. These regulations were in effect at the time Westvaco began making changes to the Luke Mill as part of the DEP. The 1980 regulations, 45 Fed. Reg. 52676, were recodified in the 1987 Code of Federal Regulations.
[4] See Memorandum of Decision Re: First Phase [Document 230].
[5] See Memorandum and Order Re Baseline Emissions [Document 247].

>     monitoring data or other records from the Luke Mill, over a two-year period which is representative of normal source operation.

The Court then found:[6]

- That the baseline period for the determination of pre-change "actual emissions" is the two-year period from March 1979 to February 1981.

- That the pre-change rate of "actual emissions" shall be determined by reference to the actual physical emissions of $SO_2$ during the baseline period.

- That post-change rate of "actual emissions" shall be determined by reference to the post-change "potential to emit."

The Court has held argument and shall soon decide issues regarding the method of determining the post-change potential to emit.

Thereafter, there will remain for resolution:

- Any factual issues relating to the potential to emit.

- Any causation issues.

- Any "netting" issues.

- If liability is found, remedy issues.

**II.  DISCUSSION**

In 2005, Luke Paper Company ("LPC"), a fully owned subsidiary of NewPage Corporation, became the owner and operator

---

[6] See Second Phase Decision Re: Baseline Period and Post-Change Emissions Determination [Document 252].

of the Luke Mill.[7] LPC purchased the Luke Mill with full knowledge of this litigation.

In the Equity and Asset Purchase Agreement (the "Purchase Agreement"), Westvaco retained responsibility for the design, construction, and installation of any controls determined to be required as a result of this litigation. LPC has the obligation to operate such controls, but assumed no responsibility with respect to the defense or resolution of the action, specifically agreeing to not interfere in any way with the defense or resolution of the litigation.

Of course, LPC had no involvement whatsoever with the matters that were the subject of resolution heretofore. However, if the Court case proceeds to the remedy phase, it is possible that a remedy imposed by the Court could affect LPC's future operations of the Luke Mill. For example, the Court might order the installation of equipment that could increase LPC's cost of operation of the Luke Mill. Therefore, it is appropriate to consider whether LPC should be allowed to participate as a party in the remedy phase of the case.

---

[7] The Government initially moved to join NewPage Corporation. See Motion To Join NewPage Corporation as a Party-Defendant [Document 172]. In response, NewPage Corporation identified that Luke Paper Company, its subsidiary, was the actual owner and operator of Luke Mill. Opp. 2 [Document 195]. Based on those representations, the Government requested that Luke Paper Company (rather than NewPage Corporation) be joined as the party-Defendant. Reply 2 [Document 210].

The Government contends that LPC should be added because of alleged successor liability for a remedy that may be imposed and pursuant to Rule 19 of the Federal Rules of Civil Procedure.[8]

These contentions shall be addressed in turn.

A.   SUCCESSOR LIABILITY

The Fourth Circuit has recognized a "settled rule" that a corporation which acquires the assets of another corporation does not take the liabilities of the predecessor corporation from which the assets are acquired unless one of four generally recognized exceptions are met: (1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) the transaction may be considered a de facto merger; (3) the successor may be considered a "mere continuation" of the predecessor; or (4) the transaction is fraudulent.  United States v. Carolina Transformer Co., 978 F.2d 832, 838 (4th Cir. 1992).

The Government asserts, that in its acquisition of the Luke Mill, LPC successor expressly or impliedly agreed to assume the liabilities of the predecessor.  The Government seeks to rely upon HRW Systems, Inc. v. Washington Gas Light Co., 823 F. Supp. 318 (D. Md. 1993). In HRW, Washington Gas was a successor owner

---

[8] All Rule references are to the Federal Rules of Civil Procedure.

5

of a facility having liability under the Comprehensive Environmental Response, Compensation, and Liability Act. The court found that Washington Gas was a "mere continuation" of the previous owner, that it unequivocally assumed the liabilities in the articles of transfer, and also that the transaction was a de facto merger. Id. at 336-37.

In the Purchase Agreement relating to the Luke Mill, Westvaco agreed to defend the instant case and to, at its sole cost and expense, pay for any pollution control equipment required as a result of any resolution thereof. The agreement also provided:

> [Westvaco] Seller shall not be liable for any Luke Mill NSR Litigation Losses . . . Resulting from any increased Costs of Operation of the Luke Mill (unless and only to the extent such increase in Costs of Operation exceeds $2 million annually within five years of resolution) arising from requirements imposed by or resulting from any settlement, verdict, judgment, consent decree or other resolution of the Luke Mill NSR Litigation.

Purchase Agreement, Schedule 11.2(a)(viii)(1).

Therefore, LPC agreed to bear the burden of all increased operational costs resulting from a remedy imposed herein except that Westvaco would bear the first two millions dollars of such costs for the first five years.

6

Thus, LPC did not agree to assume liability <u>to the Government</u> but, rather, to bear certain of the costs of operation that could result from a remedy imposed on Westvaco. The purported "assumption," such as it is, is no more than an agreement by LPC not to seek reimbursement <u>from Westvaco</u> from certain consequential costs that could be caused by the result of the instant case.

The Court finds that LPC is not subject to successor liability.

### B. JOINDER UNDER RULE 19

Rule 19(a)(1) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. Pro. 19(a)(1).

As noted above, except for a limited indemnity from Westvaco, LPC, as owner and operator of the Luke Mill, will bear

any increase in costs of operation "arising from requirements imposed by or resulting from any settlement, verdict, judgment, consent decree or other resolution" of the instant case. Purchase Agreement, Schedule 11.2(a)(viii)(1). Thus, LPC has a claimed interest relating to the subject of the action, i.e. it owns and operates the Luke Mill. In addition, LPC is so situated that disposing of the action in its absence may "as a practical matter impair or impede [its] ability to protect the interest." Fed. R. Civ. Pro. 19(a)(1).

LPC has a real and significant interest in participating in any remedy phase of the case since it would, potentially, bear substantial additional costs of operation as a result of the resolution of the case. Indeed, it is possible that in regard to any resolution, Westvaco and LPC might have conflicting interests. For example, Westvaco might seek a remedy that has minimal initial cost (borne by Westvaco) and maximum operation cost increase (largely borne by LPC).

The Government may also have a valid argument that in the absence of LPC, the court cannot accord complete relief among existing parties. In this regard, it is possible that LPC would contend that it could object to the placement of certain pollution control equipment at the Luke Mill. This objection could require another round of litigation.

The Government argues that controlling pollution at Luke Mill, which is the objective of the litigation, cannot be achieved without LPC's ongoing cooperation and participation. The relief is not a simple payment of money.  Specifically, the Government has noted that installation of pollution controls on the power boilers (even though Westvaco is contractually responsible for the design, installation and construction) will require access to the Mill, construction at the Mill, coordination with production operations (e.g., to tie the pollution control equipment into the boiler will require the boiler to be shut down), and continued operation post-installation.

In order to ensure that this work is done, and that the equipment is properly operated, the current owner and operator of the Mill must be subject to whatever order is issued embodying the required injunctive relief.  As a practical matter, a judgment that requires remedial action at the facility cannot be enforced against a defendant that does not actually own the facility.  Certainly, there appears to be a serious question whether meaningful and complete relief would be available without LPC's agreement to be bound by the Court's judgment.

Counsel for LPC has noted that since LPC has not, itself, committed any pollution violation, it would be unfair to label it as a defendant in the instant case. The Court must note that the Government still contends that LPC is, in fact, continuously violating pollution laws and/or regulations.[9] However, the Court has not accepted this contention. The Court will, therefore, consider providing LPC with the opportunity to avoid the opprobrium of the label of "defendant." Perhaps, LPC could elect to agree to be bound by the resolution of the instant case and moot the need for its participation as a party.[10] Alternatively, perhaps, LPC could be added as an "Intervenor" rather than a defendant.

III. CONCLUSION

For the foregoing reasons:

1. The United States' Renewed Motion to Join the Luke Paper Company as a Party Defendant [Document 261] is GRANTED.

2. Luke Paper Company shall be added as a Defendant unless, by May 15, 2011, Luke Paper Company shall file a pleading agreeing to be bound by the result of

---

[9] The Government is not pursuing liability against LPC for violating PSD regulations, although it reserves the right to assert a claim in the future based on a clarification or change in law. (Mot. 2, n.3, Document 261.)

[10] This course of action may be most unwise since LPC would be giving up the chance to present its own position regarding possible remedies.

>   the instant case or seeking to be added as an Intervenor.

3. If Luke Paper Company files a timely pleading agreeing to be bound by the result of the instant case or seeking to be added as an Intervenor, any party shall, by June 15, 2011, show cause why the Court should, despite such filing, add Luke Paper Company as a Defendant.

SO ORDERED, on Thursday, April 7, 2011.

                                        /s/_____
                                   Marvin J. Garbis
                              United States District Judge