# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Charles H. Haake
Direct: +1 202.887.3581
Fax: +1 202.530.9636
CHaake@gibsondunn.com

Client: 97854-00002

April 9, 2012

Honorable Marvin J. Garbis
Judge
United States District Court for the
District of Maryland
101 W. Lombard Street
Baltimore, MD  21201

Re:   *United States v. Westvaco*; Case No. MJG 00 CV 2602

Judge Garbis:

Pursuant to this Court's Remedy Phase Scheduling Order (Doc. 283), Westvaco hereby notifies the Court and the parties that it seeks leave to file the following motions for summary judgment:

1. A motion for summary judgment based on Plaintiff's lack of evidence of excess emissions, on the ground that Plaintiff's evidence of excess emissions rests entirely on an expert whose opinions on the topic are inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

2. A motion for summary judgment based on the unavailability of Plaintiff's requested injunctive relief, on the ground that because Westvaco no longer owns or operates the Luke Mill, it lacks the capacity to perform the equitable relief requested by Plaintiff.

3. A motion for summary judgment based on the inapplicability of Best Available Control Technology ("BACT") to the Digester Expansion Project, on the ground that under the 1978 version of the PSD Regulations, which would have been applicable to any PSD permit application filed by Westvaco prior to the Digester Expansion Project (the "DEP"), BACT would not have been required because there would be no increase in allowable emissions from the No. 25 Power Boiler.

GIBSON DUNN

Honorable Marvin J. Garbis
April 9, 2012
Page 2


More detailed one-page summaries of the above-referenced proposed motions for summary judgment are being submitted herewith. We look forward to the opportunity to discuss these matters with the Court.


Best regards,

Charles H. Haake

CHH/ama
Enclosures

cc: All Counsel of Record (via ECF)

101269518.1

<u>**United States v. Westvaco Corporation**</u>
***Defendant's Proposed Motion For Summary Judgment Based on
Lack of Evidence of Excess Emissions***

As Plaintiff is seeking equitable relief in the form of an injunction, it must establish that it has suffered an irreparable injury on account of Westvaco's alleged violation of the PSD provisions of the Clean Air Act. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). In the absence of an irreparable injury, Plaintiff is not entitled to injunctive relief. Here, Plaintiff intends to show an irreparable injury to the environment by demonstrating that the Luke Mill has emitted greater amounts of SO2 after the Digester Expansion Project ("DEP") than would have resulted had Westvaco gone through PSD review and installed an SO2 control on the Number 25 Power Boiler.

Plaintiff has designated a "relay team" of experts to make this case. First, Dr. James Staudt offers the opinion that Best Available Control Technology ("BACT") at the time of the DEP in 1981 would have required the installation of an SO2 scrubber on the Number 25 Power Boiler. He then estimates what SO2 emissions would have been had the Luke Mill installed an SO2 scrubber, and then opines that the subsequent SO2 emissions exceeding that amount constitute "excess emissions." Dr. Staudt's estimates concerning excess emissions were given to another expert, Mr. Lyle Chinkin, who performed air dispersion modeling to estimate how much ambient concentrations of PM-2.5, and mercury and sulfate deposition increased on account of these excess emissions. Mr. Chinkin's opinions were then given to Plaintiff's other experts, Mr. James Webb, Dr. Joel Schwartz and Dr. Leland Deck, to determine the extent to which the excess emissions impacted the environment.

Plaintiff's entire case for irreparable injury, therefore, rests on the opinions of Dr. Staudt concerning what BACT would have been at the time of the DEP and the resulting excess emissions. If his opinions are inadmissible, then Plaintiff would not have any evidence concerning excess emissions, and consequently no foundation for their evidence of irreparable harm.

Westvaco intends to bring a motion to exclude Dr. Staudt's opinions concerning BACT under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because he employed an improper methodology for determining BACT at the time of the DEP. Dr. Staudt used the "top down" methodology for determining BACT. That methodology, however, did not exist at the time of the DEP. Rather, it was proposed for the first time by EPA in 1987, and EPA subsequently issued guidance concerning the "top down" method in 1989. *See* "Transmittal of Background Statement on 'Top-Down' Best Available Control Technology", John Calcagni, Director, Air Quality Management Division U.S. EPA Office of Air Quality Planning and Standards (June 13, 1989). At the time of the DEP, EPA utilized a different method for determining BACT, called "bottom up." This method leads to different results concerning BACT. Because Dr. Staudt employed an improper methodology for determining BACT at the time of the DEP, his opinions on the topic are inadmissible. And without admissible evidence establishing that there were excess emissions of SO2 from the Luke Mill, none of Plaintiff's other experts have a foundation for their opinions, and Plaintiff cannot show irreparable harm. Westvaco is therefore entitled to summary judgment.

<u>*United States v. Westvaco Corporation*</u>

*Defendant's Proposed Motion for Summary Judgment Based on
the Unavailability of Plaintiff's Requested Injunctive Relief*

Plaintiff seeks equitable relief in the form of a mandatory injunction ordering Westvaco to seek and obtain a Prevention of Significant Deterioration ("PSD") permit for the No. 25 Power Boiler at the Luke Mill, and as a result install Best Available Control Technology ("BACT") on the boiler. Plaintiff also contends that the Luke Mill should mitigate past excess SO2 emissions from the No. 25 Power Boiler by installing a scrubber on the No. 24 Power Boiler. Plaintiff's claim for this equitable relief is ripe for summary judgment because, on the undisputed facts before this Court, the requested injunction would be impossible and unenforceable as a matter of law. A mandatory injunction requiring performance of an act cannot be entered against one who lacks the authority to perform that act. *Okpalobi v. Foster*, 244 F.3d 405, 431 (5th Cir. 2001).

Recent decisions have held that a party alleged to have violated the PSD provisions of the Clean Air Act is not subject to injunctive relief where it has since sold the facility at which the violation allegedly took place. *United States v. Midwest Generation, LLC*, 781 F.Supp.2d 677, 685-86 (N.D. Ill. 2011); *United States v. EME Homer City Generation, LP*, --- F. Supp. 2d ---, 2011 WL 4859993 (W.D. Pa. 2011) at *13-14. It is undisputed that Westvaco no longer owns or operates the Luke Mill and therefore lacks the authority to comply with the Plaintiff's proposed injunction even if it were imposed by the Court.

For instance, the requirement to install BACT is dependent on the requirement to obtain a PSD permit because "BACT limits are imposed through the preconstruction-permit process. In the absence of such a permit, they do not exist." *United States v. Midwest Generation, LLC*, 2011 WL 1003916 at *12. *See also Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1017 (8th Cir. 2010) (the BACT requirements can "best understood as requiring that BACT limits be incorporated into a facility's construction plans and PSD permits, not as establishing an ongoing duty to apply BACT independent of the permitting process.") Thus, in order to be required to install BACT, Westvaco must first be required to obtain a PSD permit for the Luke Mill. But because Westvaco no longer owns or operates the Luke Mill, it has no standing to apply for and obtain a PSD permit for that source. Only an owner or operator can seek a PSD permit. 42 U.S.C. § 7475(a). Nor can the Plaintiff seek an injunction to force Westvaco to pay for the present owner's costs of obtaining a PSD permit and associated installation of BACT. This Court has held that civil penalties are not available to Plaintiff because the five-year statute of limitations has run. Civil Penalties Order at 11 n.2 (Rec. Doc. 15). Ordering a former owner or operator to pay a current owner or operator for obtaining a PSD permit and associated installation of BACT constitutes an attempt to impose civil penalties in the guise of injunctive relief. *EME Homer City Generation*, 2011 WL 4859993 at *15.

Finally, Plaintiff is not entitled to mitigation from the No. 24 Power Boiler as a matter of law because there has been no violation of the Clean Air Act with respect to that unit. *See U.S. v. Cinergy Corp.*, 618 F.Supp.2d 942, 967 (S.D. Ind. 2009) (mitigation could not include reductions from units 4 and 6 of plant because "Plaintiffs have not proven that Cinergy violated any CAA provisions with respect to units 4 and 6" and such mitigation would therefore be "punitive in nature."). Therefore, Plaintiff is not entitled to the requested injunctive relief against Westvaco as a matter of law, and summary judgment should be entered in Westvaco's favor.

<u>United States v. Westvaco Corporation</u>
*Defendant's Proposed Motion For Summary Judgment Based on Inapplicability of BACT to the Digester Expansion Project*

Plaintiff contends that the Digester Expansion Project ("DEP") at the Luke Mill triggered the Prevention of Significant Deterioration ("PSD") provisions of the Clean Air Act because it constituted a major modification of the Number 25 Power Boiler. Consequently, Plaintiff contends, Westvaco should have applied for and obtained a PSD permit prior to commencing construction on the DEP. Plaintiff further contends that the PSD regulations applicable to the DEP would have required the imposition of Best Available Control Technology ("BACT") on the Number 25 Power Boiler. Plaintiff's expert, Dr. James Staudt, offers opinions that BACT at the time of the DEP would have required the installation of an SO2 scrubber on the Number 25 Power Boiler. Plaintiff's claims are ripe for summary judgment because the undisputed facts demonstrate that under the applicable regulations, BACT requirements would not have applied to the DEP even if Westvaco had applied for a PSD permit, as Plaintiff contends it should have.

This Court has determined that the DEP "commenced"—as that term is defined at 40 CFR § 52.21(b)(9)—in February 1981. *See* Second Phase Decision re: Baseline Period and Post-Change Emissions Determination (Doc. 252) at 5. Prior to the commencement of the DEP, on May 9, 1980, Westvaco applied to the State of Maryland for a non-PSD permit to construct the two new digesters, and the State issued a permit to construct on June 9, 1980. Given this timeline, it is undisputed that if Westvaco had applied for a PSD permit prior to the commencement of the DEP, BACT would not have been required. This is because the 1980 PSD Regulations contain a grandfathering provision at 40 CFR § 52.21(i)(9). That subsection of the regulations provides that if a source submits a PSD application before August 7, 1980, and if the Administrator subsequently determines that the application was complete, then the BACT provisions in the earlier 1978 PSD Regulations would apply to the project, and not the BACT provisions in the 1980 PSD Regulations. Given the commencement date of the DEP, Westvaco would have submitted a completed PSD permit application for the DEP at the same it submitted its non-PSD permit application, thus triggering this provision.

Consequently, this Court must look to the 1978 PSD Regulations to determine whether BACT would have been required for the DEP. *See* Approval and Promulgation of State Implementation Plans, 43 Fed. Reg. 26,368 (June 19, 1978). 40 CFR § 52.21(j) as in effect in the 1978 PSD rule provides that "the requirement for best available control technology shall apply only to each new or modified facility which would increase the allowable emissions of an applicable pollutant." 43 Fed. Reg. at 27,407. Here, it is undisputed that at the time of the DEP, SO2 emissions from the Luke Mill's power boilers were restricted by a 49 ton-per-day cap. That emission limit remained unchanged after the DEP. Because there was no increase in allowable emissions from the Luke Mill's power boilers resulting from the DEP, BACT would not have been required under the 1978 PSD Regulations.[1] And if BACT would not have been required, Plaintiff has suffered no injury on account of Westvaco's failure to install BACT.

---

[1] In addition, application of the 1978 PSD Regulations would lead to the conclusion that the DEP would not have been a "major modification" because it would not have resulted in an increase in the Luke Mill's "potential to emit" as that term was defined in the 1978 Regulations. *See* 43 Fed. Reg. at 26,403 – 404.