### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
**Northern Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff,** | |
| **v.** | **CASE NO. MJG 00-CV-2602** |
| **WESTVACO CORPORATION** | |
| **Defendant.** | |

### DEFENDANT WESTVACO CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON LACK OF EVIDENCE OF IRREPARABLE HARM

Raymond B. Ludwiszewski (Bar No. 14905)
*rludwiszewski@gibsondunn.com*
Charles H. Haake (*pro hac vice*)
*chaake@gibsondunn.com*
Justin A. Torres (*pro hac vice*)
*jtorres@gibsondunn.com*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-8500
(202) 955-8500 (voice)
(202) 467-0539 (facsimile)

*Counsel for Defendant Westvaco Corporation*

Defendant, Westvaco Corporation ("Westvaco"), hereby submits the following memorandum in support of its Motion for Summary Judgment on lack of evidence of irreparable harm.

## I.    Introduction

The Government seeks equitable relief in the form of a mandatory injunction ordering Westvaco to obtain a Prevention of Significant Deterioration ("PSD") permit for the Digester Expansion Project ("DEP") which would contain a limit on sulfur dioxide ("SO2") emissions from the No. 25 Power Boiler based on Best Available Control Technology ("BACT").  *See* April 17, 2012 Letter from M. Elmer to Judge Garbis re: Luke Paper Company Bankruptcy, Exh. A hereto.  To obtain that relief, the Government must establish that it has suffered an irreparable injury on account of Westvaco's alleged violation of the PSD provisions of the Clean Air Act. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

The Government's claim for irreparable harm rests on estimates of "excess emissions" offered by Dr. James Staudt.  Every other expert witness retained by the Government to show irreparable harm relies, at first- or second-hand, on these estimates.  Today, Westvaco has filed a Motion to Exclude Dr. Staudt's testimony on the ground that his opinion concerning "historic BACT"—*i.e.*, what the BACT limit on the No. 25 Power Boiler would have been had Westvaco obtained a PSD permit for the DEP—is based on an improper methodology and is unhelpful to the trier of fact.  If this testimony is excluded, the Government cannot show irreparable harm, a fundamental requirement for injunctive relief.  The Government's remedy case is built on Dr. Staudt's testimony; if it is excluded, the case crumbles and Westvaco is entitled to summary judgment.

## II.     Statement of Facts

In this case, the Government intends to show an irreparable injury to the environment by demonstrating that the Luke Mill has emitted greater amounts of SO2 after the DEP than would have resulted had Westvaco gone through PSD review and installed an SO2 control on the Number 25 Power Boiler.  The Government attempts to make this showing through a "relay team" of experts who develop various facets of this argument.  But as shown herein, the first leg of this relay team is the estimate of excess emissions of Dr. James Staudt.  Because those estimates are the product of an unreliable method and must be excluded, the Government cannot show irreparable harm.

In his report, Dr. Staudt offers opinions that BACT at the time of the commencement of the DEP in 1981 would have been determined to be an emission limit of 0.35 pounds of sulfur dioxide per million BTU heat input to the boiler.  He based this BACT limit on an emission control strategy that entailed installing a wet sodium scrubber operating at 90 percent efficiency, and the assumption that the sulfur content of the coal burned in the No. 25 Power Boiler would be limited to 1.6 percent.  Expert Report of Dr. James Staudt at 45, relevant portions excerpted as Exh. B hereto.  He then estimates what SO2 emissions would have been if the Luke Mill had installed an SO2 scrubber, and compares that figure to estimated actual emission level.  The difference between the two is the alleged "excess emissions" from the Mill caused by the failure to control the No. 25 Power Boiler as part of the DEP.  *Id*. at 57.  Dr. Staudt also offers opinions concerning excess mercury emissions allegedly caused by the mill not having installed a scrubber.  *Id*. at 56.

Dr. Staudt's estimates concerning excess emissions were given to another expert, Mr. Lyle Chinkin, who performed air dispersion modeling to estimate how much ambient concentrations of $PM_{2.5}$, and mercury and sulfate deposition increased in the region surrounding

the Luke Mill because of these excess emissions.  *See* Expert Report of Lyle Chinkin at 3-22,

relevant portions excerpted as Exh. C hereto (noting definition of "excess emissions" derived

from Staudt); *id*. at 4-20, 4-23 (maps based on Staudt's emission estimates showing modeled

increase in deposition of sulfate and mercury attributable the Mill's alleged excess emission in

2005).  *See also* Tr. of Chinkin Deposition at 20:13-16, relevant portions excerpted as Exh. D

hereto (testifying that Chinkin relied on Staudt's "estimate of the excess S02 emissions and also

the effect of reducing S02 would have had on mercury. . . . So those were used as inputs to our

air quality simulations"); *id*. at 25:23-26:3 ("But you took [Staudt's] numbers as a given and you

just plugged those into your model and then determine what the ambient impacts from those

excess emissions would be; is that right?" "That's correct. That's the chain as you've just

described it, yes.").

   The results of Mr. Chinkin's modeling were then given to three other experts, James

"Rick" Webb, Dr. Charles Driscoll, and Dr. Leland Deck, who used Mr. Chinkin's modeling to

describe alleged impacts from the increased deposition in the region surrounding the Luke Mill.

Expert Report of James "Rick" Webb at 39-41, relevant portions excerpted as Exh. E hereto

(relying on emissions transport maps drawn from Chinkin); Expert Report of Dr. Charles

Driscoll at 25-26, relevant portions excerpted as Exh. F hereto (same); Expert Report of Dr.

Leland Deck at 3-4, relevant portions excerpted as Exh. G hereto (same).  These experts form the

basis of the Government's contention that alleged excess emissions from the Mill have caused

irreparable harm justifying injunctive relief, and they all rely on Dr. Staudt's estimates of excess

emissions to develop their own testimony.

## III. Standard Of Review

   Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact

is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  In

considering a motion for summary judgment, a judge's function is limited to determining

whether sufficient evidence exists on a claimed factual dispute to warrant submission of the

matter to the fact finder for resolution at trial.  *Id*. at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable

inferences in the light most favorable to the nonmoving party.  *Ricci v. DeStefano*, 557 U.S. 557

(2009); *Scott v. Harris*, 550 U.S. 372, 378 (2007).  However, this Court must also abide by its

affirmative obligation to prevent factually unsupported claims and defenses from going to trial.

*Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993).  If the evidence presented by the

nonmoving party is merely colorable, or is not significantly probative, summary judgment must

be granted.  *Anderson*, 477 U.S. at 249–50.  On the other hand, a party opposing summary

judgment must "do more than simply show that there is some metaphysical doubt as to the

material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986);

*see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).

## IV.    Argument

Today, Westvaco has filed a motion pursuant to Federal Rule of Civil Procedure 702 and

*Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), to exclude Dr. Staudt's

testimony concerning historic BACT on grounds that it employs an unreliable method and that

his opinion is not helpful to the trier of fact.  Specifically, Dr. Staudt employed a "top-down"

method for making BACT determinations that was only developed in 1987, after the DEP

commenced.  His historical BACT determination is thus unreliable because it employs a method

4

not in use at the relevant time. Because the historical BACT determination is then used to develop his estimate of excess emissions from the Mill, that portion of Dr. Staudt's opinion must be excluded as well. *See* Westvaco Corporation's *Daubert* Motion To Exclude The Reports, Opinions, And Testimony Of Dr. James E. Staudt Re "Historic BACT" and Excess Emissions from the No. 25 Power Boiler at 22-24 (Doc. No. 302).

Should the Court exclude Dr. Staudt's opinion on historical BACT as unreliable, it must grant Westvaco summary judgment on the issue of irreparable harm. All of the experts presenting opinions as to impacts in the natural and human environment attributable to the Luke Mill rely, fundamentally, on air transport modeling performed by Dr. Chinkin. That modeling, in turn, relies on Dr. Staudt's estimates. If those estimates are unreliable, the opinions of Webb, Discoll, and Deck as to impacts are also unreliable. *See, e.g.*, *Lovato v. Burlington No. & Santa Fe Ry. Co.*, 2002 WL 1424599, at *9 (D. Colo. 2002) (excluding expert testimony that relied on the opinion of another expert who was found to unreliable); *Dennis v. Pertec Computer Corp.*, 927 F. Supp. 156, 162 (D.N.J. 1996) (same); *Henry v. Hess Oil Virgin Islands Corp.*, 163 F.R.D. 237, 247 (D.V.I. 1995) (same). Without those opinions, there is no evidence in the record of irreparable harm. *See, e.g.*, *Higginbotham v. KCS Int'l, Inc.*, 85 F. App'x 911, 917 (4th Cir. 2004) (noting that it is "clearly proper" to grant summary judgment when a party's expert, whose testimony constituted the party's entire proffer of proof, is excluded); *Wehling v. Sandoz Pharm. Corp.*, 162 F.3d 1158, 1998 WL 546097, at *6 (4th Cir. 1998) (unpublished) (affirming grant of summary judgment where plaintiff "relied almost exclusively on the proffered testimony" of an excluded expert to prove the "essential elements of her claim").

Accordingly, if Dr. Staudt's testimony is excluded, the Court should grant summary judgment to Westvaco on the issue of whether the Government has shown irreparable harm attributable to the alleged excess emissions from the Luke Mill.

**V.      Conclusion**

WHEREFORE, considering the foregoing, Defendant Westvaco Corporation prays that the Court grant its motion for summary judgment on the ground that the Government cannot show irreparable harm in support of its requested injunctive relief.

DATE: June 15, 2012                          Respectfully submitted,


_____/s/_____
Raymond B. Ludwiszewski (Bar No. 14905)
*rludwiszewski@gibsondunn.com*
Charles H. Haake (*pro hac vice*)
*chaake@gibsondunn.com*
Justin A. Torres (*pro hac vice*)
*jtorres@gibsondunn.com*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-8500
(202) 955-8500 (voice)
(202) 467-0539 (facsimile)


*Counsel for Defendant Westvaco Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2012, a true and correct copy of the foregoing

DEFENDANT WESTVACO CORPORATION'S MEMORANDUM IN SUPPORT OF ITS

MOTION FOR SUMMARY JUDGMENT ON LACK OF EVIDENCE OF IRREPARABLE

HARM was filed using the Court's electronic case filing system, which results in service on all

counsel of record registered on the case management/electronic filing ("CM/ECF") system.

_____/s/_____

Charles H. Haake
