## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO.: |
| v. | ) MJG-00-2602 |
| | ) |
| WESTVACO CORPORATION, | ) |
| | ) |
| Defendant. | ) |

### REPLY OF WESTVACO CORPORATION TO UNITED STATES' COMBINED OPPOSITION TO WESTVACO CORPORATION'S *DAUBERT* MOTION TO EXCLUDE THE REPORTS, OPINIONS, AND TESTIMONY OF DR. JAMES E. STAUDT RE "HISTORIC BACT" AND EXCESS EMISSIONS FROM THE NO. 25 POWER BOILER AND WESTVACO CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON LACK OF EVIDENCE OF IRREPARABLE HARM

Raymond B. Ludwiszewski (Bar No. 14905)
*rludwiszewski@gibsondunn.com*
Charles H. Haake (*pro hac vice*)
*chaake@gibsondunn.com*
Justin A. Torres (*pro hac vice*)
*jtorres@gibsondunn.com*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-8500
(202) 955-8500 (voice)
(202) 467-0539 (facsimile)

*Counsel for Defendant Westvaco Corporation*

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...............................................................................1

II.     ARGUMENT .....................................................................................3

A.    The Opinions Dr. Staudt Intends To Offer At Trial Concerning Historic BACT Are Based Entirely On The Top-Down Method. ........................................ 3

B.    The *Daubert* Inquiry Focuses On The Expert's Methodology, Not His Results, And The Fact That Dr. Staudt Used An Improper Methodology Renders His Opinions Inadmissible......................................................... 5

C.    The Government's Argument That Bottom-Up And Top-Down BACT Analyses Lead To The Same Conclusion Is Incorrect And Unsupported. ............. 8

D.    The Gatekeeping Function Of The Court Expounded In *Daubert* And Rule 702 Should Be Exercised In This Case................................................................. 11

E.    If Dr. Staudt's Opinion Is Excluded, The Government Cannot Show Irreparable Harm. ................................................................................. 12

        1.    Regardless of the fact or circumstances of the alleged violation, Westvaco must show irreparable harm.................................................... 13

        2.    There is no evidence of irreparable harm from excess emissions absent Dr. Staudt's opinion.................................................... 14

III.    CONCLUSION ................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Honda Motor Co. v. Allen*,
    600 F.3d 813 (7th Cir. 2010) ........................................................ 11

*Coffey v. Dowley Mfg., Inc.*,
    187 F. Supp. 2d 958 (M.D. Tenn. 2002) ........................................ 6

*Cummings v. Deere & Co.*,
    589 F. Supp. 2d 1108 (S.D. Iowa 2008) ........................................ 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) .............................................................. passim

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ...................................................................... 13

*Envtl. Def. Fund, Inc. v. Lamphier*,
    714 F.2d 331 (4th Cir. 1983) ........................................................ 14

*Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*,
    394 F.3d 1054 (8th Cir. 2005) ........................................................ 4

*Gall v. United States*,
    552 U.S. 38 (2007) .......................................................................... 5

*Rita v. United States*,
    551 U.S. 338 (2007) ........................................................................ 5

*Sher v. Raytheon Co.*,
    419 F. App'x 887 (11th Cir. 2011) .............................................. 11

*United States v. Alisal Water Corp.*,
    326 F. Supp. 2d 1010 (N.D. Cal. 2002) ...................................... 14

*United States v. Certain Interests in Property in Borough of Brooklyn, Kings County,
    State of New York*,
    326 F.2d 109 (2d Cir. 1964) ........................................................ 15

*United States v. Cinergy Corp.*,
    618 F. Supp. 2d 942 (S.D. Ind. 2009) .......................................... 13

*United States v. Moreland*,
    437 F.3d 424 (4th Cir. 2006) .......................................................... 5

**TABLE OF AUTHORITES** *(continued)*

<u>Page(s)</u>

*United States v. Oakland Cannabis Buyers' Coop.*,
    532 U.S. 483, 497 (2001)..........................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. ---, 131 S. Ct. 2541 (2011)......................................................................12

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982)..................................................................................................13

**Rules**

Fed. R. Civ. P. 26(a)(2)(B)(i)..........................................................................................3

Fed. R. Civ. P. 26(a)(2)(C) ..............................................................................................3

Fed. R. Evid. 702 ......................................................................................................1, 16

Defendant Westvaco Corporation ("Westvaco") hereby submits this Reply in support of

its Motion under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.*, 509 U.S. 579 (1993), to exclude the expert opinions of the United States' expert, Dr. James

E. Staudt, concerning "historic BACT"[1] as well as his resulting opinion concerning excess

emissions (hereinafter the "*Daubert* Motion") and in support of its Memorandum in support

thereof (Doc. No. 302).  This Reply is also in support of Westvaco's Motion for Summary

Judgment on lack of evidence of irreparable harm (hereinafter the "Irreparable Harm Motion")

and its Memorandum in support thereof (Doc. No. 303), and in Response to the Government's

combined opposition to both of those Motions (Doc. No. 310) (hereinafter the "*Daubert* Opp.").[2]

## I.        INTRODUCTION

The Government does not dispute that EPA has applied two different methodologies for

determining BACT over the years.  Up until 1987, BACT was determined using the "bottom-up"

method, and after 1987, BACT has been determined using the "top-down" method.  These two

methodologies are entirely distinct from one another, they rely on different factors, and their

proper application is described in separate detailed guidance documents issued by EPA.  The

Government likewise does not contest that BACT for the DEP (assuming it was required) would

have been determined in 1980 or 1981 when the bottom-up methodology was in effect.

Nevertheless, the historic BACT opinion offered by Dr. Staudt in his expert report in this case is

based entirely on the top-down method and not the bottom-up method in force at the time.  The

---

[1]  In this case, "historic BACT" is what the Best Available Control Technology ("BACT") limit
on the No. 25 Power Boiler would have been in 1981 had Westvaco obtained a Prevention of
Significant Deterioration ("PSD") permit for the Digester Expansion Project ("DEP").

[2]  Because the Government filed a combined opposition to Westvaco's *Daubert* Motion and
Irreparable Harm Motion, Westvaco is filing a combined reply thereto.

fact that Dr. Staudt used the wrong methodology for determining historic BACT is sufficient by itself to exclude his opinions under *Daubert*.

In its Opposition, the Government claims that even if it was improper for Dr. Staudt to use the top-down BACT methodology in his initial report, he essentially cured that flaw in his Rebuttal Report, where he used the bottom-up BACT methodology and came to the same result as he reached in his initial report. But the Federal Rules of Civil Procedure do not allow an expert to offer a faulty and inadmissible opinion in his Rule 26 Report and cure that by offering a new opinion in rebuttal. The affirmative opinion concerning historic BACT Dr. Staudt intends to offer at trial is contained in his initial report, and that opinion is based on the wrong methodology for determining historic BACT.

Additionally, the Government's contention that there is no substantive difference between the bottom-up and top-down methodologies and they therefore reach the same conclusion is unsupported and false. As described in detail in Westvaco's *Daubert* Memorandum and the accompanying declaration of John (Jack) M. Burke, there are significant differences between how a bottom-up BACT analysis is performed and how a top-down analysis is performed, and these differences often led to different results even when EPA was the permitting authority. Neither Dr. Staudt nor the Government has offered anything to refute these facts. Consequently, the post-hoc justification offered to excuse Dr. Staudt's use of an improper methodology for determining historic BACT is entirely without merit.

Finally, the Government argues that even if Dr. Staudt's opinion is excluded, Westvaco is not entitled to summary judgment. This is not correct. The Government must show that Westvaco's alleged violation of the PSD provisions of the Clean Air Act have resulted in irreparable harm in order to be entitled to injunctive relief. The Government's only evidence

purporting to link Westvaco's conduct to any harm to the environment rests entirely on

Dr. Staudt's historic BACT opinions and the resulting opinions concerning excess SO2

emissions.  If those opinions are excluded (as they should be), then the Government has no

evidence whatsoever that Westvaco's alleged violation of the Clean Air Act has caused any harm

to the environment.  Westvaco's motion for summary judgment should therefore be granted.

## II.    ARGUMENT

### A.    The Opinions Dr. Staudt Intends To Offer At Trial Concerning Historic BACT Are Based Entirely On The Top-Down Method.

As explained in Westvaco's BACT Motion, the opinions Dr. Staudt intends to offer at

trial concerning historic BACT are based entirely on his application of the top-down BACT

methodology.  *See* Westvaco's BACT Memorandum at 10.  Apparently recognizing the obvious

problem posed by the fact that the top-down methodology did not even exist at the time of the

DEP, the Government now claims that Dr. Staudt "based his opinions concerning historic BACT

on both the top-down and bottom-up approaches," *Daubert* Opp. at 3, and cites to the opinions in

Dr. Staudt's Rebuttal Report.  *Id.* at 9.  This argument, however, ignores the requirements of the

Federal Rules of Civil Procedure and turns the rules of expert disclosure on their head.

Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires that an expert's report contain "a

complete statement of all opinions the witness will express and the basis and reasons for them."

Furthermore, Rule 26(a)(2)(C) provides that "a party must make these [expert] disclosures at the

time and in the sequence that the court orders."  Dr. Staudt submitted his expert report on

January 9, 2012, and it was to contain all of the affirmative opinions he intends to offer at trial

and all of the bases for those opinions.  That report contained a historic BACT opinion based

entirely on the top-down methodology, and did not contain a single mention of the bottom-up

methodology.  *See* Staudt Report at 12 (attached as Exhibit 3 to the Government's *Daubert*

3

Opp.); *see also* Westvaco's *Daubert* Memorandum at 10 (describing how Dr. Staudt applied the

top-down approach articulated in EPA's 1990 Draft New Source Review Workshop Manual without

deviating from it in any material respect). Dr. Staudt cannot, under the guise of a rebuttal report,

offer new opinions concerning historic BACT or new bases for his previously disclosed

opinions. *See Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1059 (8th Cir.

2005) (rejecting expert's attempt to offer new opinions in rebuttal report).

Nor can an expert use a rebuttal report to shore up methodological deficiencies

concerning his opinions disclosed to him by the other side's expert, and thereby overcome a

*Daubert* challenge. For instance, in *Cummings v. Deere & Co.*, 589 F. Supp. 2d 1108 (S.D. Iowa

2008), the defendant's expert's report "pointed out that [plaintiff's expert] Dr. Roberts did not

know several variables and had not done several calculations which were necessary, in

[defendant's expert] Mr. Senneff's opinion, to support his opinions," *id*. at 1115. The court

rejected the plaintiff's expert's attempt to self-rehabilitate his opinion through a rebuttal report:

> Yet in "rebuttal," Dr. Roberts attempted to cure these alleged deficiencies by
> offering the very calculations and variables which he openly admitted that he had
> not done and did not know, in fact, testifying that they were not relevant.
> ***Performing calculations and belatedly considering variables which an opposing
> expert correctly points out you did not do or know, and which you admitted you
> did not do or know, is not rebuttal—it is clearly the interjection of new opinion
> evidence.***

*Id.* (emphasis added). The court therefore concluded that "Dr. Roberts' belated attempts to

create a scientific basis for his opinions are a tacit admission on his part that his opinions were

not properly founded when they were formed." *Id.* at 1116.

This Court should reject the Government's attempt to rehabilitate the deficient opinions

expressed in Dr. Staudt's expert report for the same reason. Dr. Staudt used an incorrect

methodology for determining historic BACT and therefore did not consider all of the factors

relevant under the bottom-up approach.  *See* Westvaco's *Daubert* Memorandum at 10-13. In

rebuttal, he performed calculations and belatedly considered variables that he admitted in his

deposition he did not do and did not know.  *See, e.g.*, Staudt Rebuttal Report (attached as Exhibit

5 to BACT Opp.) at 10-21 (purporting to apply aspects of a bottom-up BACT analysis not

disclosed in his initial report).  Moreover, as discussed in greater detail below, Dr. Staudt's claim

that his improper top-down BACT analysis yields the same result as a proper bottom-up BACT

analysis is demonstrably untrue.[3]

**B.**     **The *Daubert* Inquiry Focuses On The Expert's Methodology, Not His Results, And The Fact That Dr. Staudt Used An Improper Methodology Renders His Opinions Inadmissible.**

The fact that Dr. Staudt failed to use a proper methodology is fatal to his opinion

concerning historic BACT.  It is well established that the *Daubert* inquiry turns on the *method*

used by an expert, not on the outcome or conclusion reached by means of that method.  *See*

*United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006) (stating that the *Daubert* inquiry must

"focus[] on the 'principles and methodology' employed by the expert, not on the conclusions

reached." (quoting *Daubert*, 509 U.S. at 595)), *overruled in part on other grounds by Gall v. United*

*States*, 552 U.S. 38 (2007) *and Rita v. United States*, 551 U.S. 338 (2007).  There is no dispute that

the top-down BACT methodology is different from the bottom-up methodology.  And because

Dr. Staudt used the wrong methodology for his opinions, his opinions are inadmissible.

Westvaco's expert explained the fundamental differences between the two BACT

methodologies.  *See* Burke Decl. ¶¶ 13-34.  Indeed, the Government concedes in its opposition that

the top-down approach "altered the framework for making [BACT] determinations [by] putting the

---

[3]   Even if this Court were to allow Dr. Staudt to base his affirmative opinions in this case on the bottom-up analysis performed in his Rebuttal Report, this Court should nevertheless reject those opinions as nothing more than post-hoc rationalizations.  *See* Westvaco's *Daubert* Memorandum at 19-20.

emphasis on considering the most stringent control options first," *Daubert* Opp. at 7.  In this case, Dr. Staudt's opinion as to historic BACT is not reliable because he employed the wrong method—a method that was not even developed until years after the period in question.  As explained in Westvaco's *Daubert* Memorandum, courts routinely exclude the opinions of experts who use "the wrong tool for the wrong job."  *See* Westvaco's *Daubert* Memorandum at 16-18 (quoting *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 976 (M.D. Tenn. 2002) and citing cases).  Significantly, the Government did not address or attempt to distinguish any of the cases Westvaco cited on this central point, nor did it cite any cases to the contrary.

Moreover, while the Government concedes that the bottom-up approach requires the consideration of factors not relevant to the top-down approach and that Dr. Staudt did not *actually* consider them, it argues that Dr. Staudt considered those factors "at least implicitly."  *Daubert* Opp. at 12.  But as Westvaco demonstrated in its *Daubert* Memorandum, that is simply not true.  Dr. Staudt flatly admitted that he did not identify potentially sensitive local concerns relevant to BACT, did not conduct an ambient impact analysis, and did not assess the impact of the DEP on the SO2 increment in the area of the Luke Mill (indeed, he did not even know what PSD increment was).  *See* Westvaco's *Daubert* Memorandum at 10-12 (quoting Staudt Depo.).

Additionally, Dr. Staudt's "implicit" consideration of factors central to a bottom-up BACT analysis was really no consideration at all.  For example, the Government concedes that Dr. Staudt did not conduct an ambient air quality impact analysis as required by the bottom-up approach, but argues instead that Dr. Staudt "did account for ambient impacts" implicitly because he evaluated the quantity of emissions reduced by each of the alternative control strategies.  *Daubert* Opp. at 12.  But simply determining that emissions would be lower is not the sort of ambient impact analysis that was required—or that was actually performed—under the bottom-up methodology.

Similarly, the impact of a modification on the PSD increment is a significant consideration in a bottom-up BACT analysis, *see* Westvaco's BACT Memorandum at 7-8, and BACT determinations made using the bottom-up approach routinely defaulted to the base case if sufficient PSD increment would be preserved.  *See* Burke Decl. ¶¶ 43-45, 52-53.  While conceding, as it must, that Dr. Staudt made no effort at all to actually assess impacts on PSD increment, the Government argues that

> Dr. Staudt's top-down analysis also implicitly considered PSD increment . . . [because] Dr. Staudt's historic BACT would have expanded increment, meaning both that there would have been more increment available for future growth and the air around the Mill would have been cleaner.  This is consistent with one of the stated purposes of BACT under the bottom-up approach: "to conserve the remaining increment as much as possible."

*Daubert* Opp. at 13 (internal citation omitted).  But this argument shows a fundamental misunderstanding of the way PSD increment was used in a bottom-up BACT analysis, which is to *conserve* PSD increment, not to *expand* it.  Westvaco's expert explained that he has "not located a single contemporaneous BACT analysis where a source was required to install a pollution control device in order to expand PSD increment, and in a number of cases the use of a scrubber was not considered BACT because the consumption of increment by the source was deemed acceptable by EPA."  Burke Decl. ¶ 46.  In contrast, the top-down methodology defaults to the most stringent control option without regard to whether doing so is necessary to preserve PSD increment.  *See* Burke Decl. ¶ 34.  Thus, the fact that Dr. Staudt defaulted to the most stringent feasible control option without considering PSD increment is consistent with the top-down methodology, but it is not consistent with the bottom-up methodology that he should have used.

The Government's *Daubert* Opposition, therefore, fails on a most fundamental level.  It is undisputed that bottom-up and top-down are two distinct methodologies for determining BACT and that they are based on different criteria.  It is equally undisputed that in reaching the opinions

expressed in his expert report, Dr. Staudt did not conduct a bottom-up methodology and did not examine the factors relevant to that methodology. The Government has cited to no legal authority for the proposition that an expert who uses the wrong methodology to address a question before the court nevertheless can have his opinion admitted in the face of a *Daubert* challenge.

**C.    The Government's Argument That Bottom-Up And Top-Down BACT Analyses Lead To The Same Conclusion Is Incorrect And Unsupported.**

The Government attempts to excuse Dr. Staudt's improper use of the top-down BACT methodology for his historic BACT opinions instead of the bottom-up methodology because (according to the Government) "both approaches comply with the statute and achieve the same result when properly applied." *Daubert* Opp. at 3. As discussed above, however, the inquiry into whether Dr. Staudt's expert opinion is reliable turns on the validity of the *method* that Dr. Staudt employed, not on whether the *outcome* of that method is the same or different as the outcome that another method would have produced. However, even if this Court were to overlook Dr. Staudt's reliance on the wrong methodology—which this Court should not do—the Government is incorrect that an analysis employing the top-down approach will necessarily yield the same outcome as one that employs the bottom-up approach.

The Government's argument on this point relies almost exclusively on the June 13, 1989, Memorandum from John Calcagni transmitting EPA's Background Statement on "Top-Down" BACT. *See Daubert* Opp. at 7, 10-11. This document, however, does not say what the Government claims it says. Nowhere in the memorandum does Calcagni state that the top-down method would result in the same BACT determination as a properly applied bottom-up analysis in every instance, nor does he state that under either approach "the emissions limit will be the same if the approaches are properly applied," as the Government claims. *Daubert* Opp. at 10.

8

The Government's contention also is refuted by the other document it cites.  *See* Apr. 5, 1988 Memorandum from Gary McCutchen Re: Note to New Source Review Task Force Members (attached as Exhibit 7 to *Daubert* Opp.).  That document recognized that there are fundamental differences between the bottom-up methodology and the top-down methodology, in that "[t]he structure of the [bottom-up] analysis is biased against choosing a more stringent, albeit more costly, but affordable control alternative as BACT." *Id.* at 1.  Therefore, under the bottom-up approach, "[t]he control option with the lowest cost per ton removal is generally considered BACT, which in most cases is the base case." *Id.*  Nothing in the McCutchen memo supports the Government's contention that bottom-up BACT analyses should lead to the same result as top-down analyses.

Moreover, the Government does not address the showing made in Westvaco's *Daubert* Memorandum and in Mr. Burke's Declaration that BACT determinations made in the early 1980s using a properly-applied bottom-up methodology very often did reach BACT limits that were different than the BACT limits that would result under a properly-applied top-down analysis.  *See* Burke Decl. ¶¶ 43-53.  As Mr. Burke explained, he

> reviewed dozens of PSD permitting files from the early 1980s and concluded that BACT determinations that were made using the bottom-up methodology at the time not only applied a methodology very different from the top-down approach employed by Dr. Staudt, but did so in a manner that reached results different from what one would expect under the top-down approach.

*Id.*, ¶ 43.  This is a significant concession by the Government, since all of the PSD decisions cited by Mr. Burke were made by EPA.  *Id.*, ¶ 44.[4]  Nowhere does the Government suggest that

---

[4]  Mr. Burke restricted his analysis to permits where EPA was the permitting authority because, at the time of the DEP, Maryland did not yet have an approved PSD rule in its SIP, and EPA therefore would have been the permitting authority responsible for reviewing and approving

EPA was making improper or deficient BACT determinations in the early 1980s.  Thus, as Mr.

Burke explains:

> The PSD permits and BACT determinations that were performed during the early
> 1980s demonstrate that the bottom-up methodology, as it was construed and
> applied by both sources and EPA at the time, did not necessarily reach the same
> results as would be found under a top-down approach.  To the contrary, the BACT
> analyses often resulted in an emission limit that was no more stringent than the
> base case, particularly where PSD increment was preserved, as would have been
> the case with the Luke Mill.

*Id.*, ¶ 53.[5]  Neither the Government nor Dr. Staudt offers anything to refute Mr. Burke's

declaration.

Consequently, the Government's argument that Westvaco's motion "is based on the

assumption that the historic BACT analysis would have been improperly performed and that the

resulting inadequate determination would have been approved by EPA," *Daubert* Opp. at 16, is

entirely wrong.  BACT determinations are performed initially by the source and, if conducted

properly, approved by the permitting authority—in this case EPA.  Any BACT analysis for the DEP

would have been conducted properly under the bottom-up methodology *as that methodology was*

*actually being implemented by EPA at the time.*  Neither the Government nor Dr. Staudt has provided

any basis for this Court to conclude that a BACT analysis for the DEP would have been conducted

any differently than the dozens of analyses EPA approved in the early 1980s.

More importantly, Westvaco's *Daubert* Memorandum and Mr. Burke's declaration

demonstrate that the post-hoc justification offered by Dr. Staudt and the Government for his failure

to properly use the bottom-up methodology for BACT—that it would yield the same result as a top-

---

any PSD permit application and accompanying BACT analysis Westvaco may have
submitted.  Burke Decl. ¶ 44.

[5]  Consequently, the representation in the Government's Opposition that "Westvaco does not
challenge that—properly applied—the bottom-up and top-down approaches will result in the
same BACT limit," *Daubert* Opp. at 11, is entirely untrue.

down analysis—cannot withstand scrutiny.  Westvaco has shown indisputably that the bottom-up

BACT methodology is not the same as the top-down methodology, and that they do not necessarily

reach the same conclusion.  There is therefore no justification for Dr. Staudt's failure to use the

correct methodology for determining historic BACT.  Dr. Staudt's historic BACT opinion is

irredeemably flawed and should be excluded.[6]

### D.      The Gatekeeping Function Of The Court Expounded In *Daubert* And Rule 702 Should Be Exercised In This Case.

In an attempt to avoid the consequences of Dr. Staudt's failure to use a proper

methodology to determine historic BACT, the Government suggests that this Court should

abandon its role as a "gatekeeper" against unreliable expert testimony because this case is not

being tried to a jury.  This Court should decline that invitation.

First, despite the Government's authority to the contrary, district courts often apply a

rigorous *Daubert* analysis in circumstances where they are deciding issues without a jury.  For

example, a number of circuit courts have concluded that a full and complete *Daubert* analysis is

necessary and appropriate at the class certification stage even though class certification decisions

are made by the court.  *See Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010)

("[W]hen an expert's report or testimony is critical to class certification, as it is here, . . . a

district court must conclusively rule on any challenge to the expert's qualifications or

submissions prior to ruling on a class certification motion.  That is, the district court must

perform a full *Daubert* analysis before certifying the class if the situation warrants." (internal

citation omitted)); *Sher v. Raytheon Co.*, 419 F. App'x 887, 890 (11th Cir. 2011) (unpublished)

(Hill, J.) ("'A district court is the gatekeeper.  It must determine the reliability of the expert's

---

[6]   The Government's *Daubert* Opposition essentially concedes Westvaco's point that
      Dr. Staudt's opinions concerning excess emissions should be excluded if his historic BACT
      opinions are excluded.  *Daubert* Opp. at 17.

experience and training as well as the methodology used. . . .  The [district] court must also resolve any challenge to the reliability of information provided by an expert if that information is relevant to establishing any of the Rule 23 requirements for class certification.'  We agree." (alteration in original) (internal citations omitted) (quoting *Am. Honda*, 600 F.3d at 815-16)). Indeed, the Supreme Court has expressed disapproval of courts watering down or refusing to apply *Daubert* at the class certification stage.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ---, 131 S. Ct. 2541, 2553-54 (2011) ("The District Court concluded that *Daubert* did not apply to expert testimony at the certification stage of class-action proceedings.  We doubt that is so . . . ." (internal citation omitted)).

Second, even if this Court had the discretion to proceed to a trial without first determining whether Dr. Staudt's opinions are admissible under *Daubert*, it should not do so in this case.  Principles of preserving scarce judicial resources and fundamental fairness to both parties militate in favor of addressing issues of admissibility at the pre-trial stage.  Allowing the Government's case against Westvaco to proceed on the basis of unreliable, inadmissible expert opinions would be an affront to judicial economy and impose unnecessary pre-trial and trial expense on all parties.  Because Dr. Staudt's opinions are so plainly inadmissible under *Daubert*, there is no need to wait for trial before ruling on their admissibility.

**E.    If Dr. Staudt's Opinion Is Excluded, The Government Cannot Show Irreparable Harm.**

As shown above, Dr. Staudt's expert opinion must be excluded as unreliable.  But the Government claims that, even without Dr. Staudt's opinion as to excess emissions from the Mill, it is still entitled to injunctive relief for two reasons: because a statutory violation entitles the Government to injunctive relief in the absence of irreparable harm, and in the alternative, because there is other evidence beyond Dr. Staudt's opinion of irreparable harm.  The first

12

assertion is incorrect as a matter of law, and the second is incorrect as a matter of undisputed fact.

**1.      Regardless of the fact or circumstances of the alleged violation, Westvaco must show irreparable harm.**

Even given the alleged statutory violation of the PSD permitting regulations by Westvaco, the Government is not excused from the standard, well-established requirement to show irreparable injury.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.").  In fact, the case upon which the Government relies most heavily in its three opposition briefs, *United States v. Cinergy Corp.*, 618 F. Supp. 2d 942, 959 (S.D. Ind. 2009), held that "traditional principles of equity" applied to the court's "consideration of the appropriate injunctive relief" for violation of the PSD provisions of the Clean Air Act, including the requirement of irreparable harm.  Therefore, the court concluded,

> to determine the appropriate relief for Cinergy's violations of the [Clean Air Act] . . . the Court will consider (1) whether Plaintiffs have suffered an irreparable injury; (2) whether there are inadequate remedies available at law to compensate for the injury; (3) whether, considering the balance of hardships between Plaintiffs and Cinergy, a remedy in equity is warranted; and (4) whether a permanent injunction would not disserve the public interest.

*Id.* at 960 (citing *eBay Inc.*, 547 U.S. at 391).  There, as here, the Government's claim of irreparable harm was based on increased emissions from the modified source.  *Id.* at 947.

The other cases cited by the government are inapposite because they pertained to circumstances where the Government sought injunctions to prevent ongoing violations of the law.  *See, e.g.*, *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497 (2001) (seeking an injunction against the continued manufacturing and distribution of medical

marijuana in violation of federal law); *Envtl. Def. Fund, Inc. v. Lamphier*, 714 F.2d 331, 335 (4th

Cir. 1983) (defendant was continually violating the law by storing hazardous wastes without a

permit); *United States v. Alisal Water Corp.*, 326 F. Supp. 2d 1010, 1027 (N.D. Cal. 2002)

(equitable relief was awarded where "even after numerous citations and orders were issued to

defendants by state and local authorities, and even after this Court granted summary judgment

with respect to more than 200 violations of the [Clean Air] Act, significant violations of the Act

continued.").

     Here, in contrast, the only violation of the Clean Air Act took place over 30 years ago

when construction on the DEP commenced without a PSD permit.  *See* April 23, 2001 Mem. and

Order on Mot. to Dismiss (Doc. No. 15) ("Civil Penalties Order") at 13 n.3.  There is no ongoing

violation and no danger of repeated violations.  Consequently, the Government is entitled to

injunctive relief only if it can show that as a result of that violation 30 years ago, Westvaco is

causing continued irreparable harm.[7]  The Government's only evidence of such irreparable harm

is its argument that more SO2 has been emitted from the Luke Mill than would have been

allowed had Westvaco applied for and obtained a PSD permit with a BACT limit.  If Dr. Staudt's

opinions concerning historic emissions are excluded, then there is no basis for concluding that

SO2 emissions from the Luke Mill have caused any irreparable harm.

    **2.**     **There is no evidence of irreparable harm from excess emissions absent Dr.**
              **Staudt's opinion.**

     The Government argues that even if Dr. Staudt's opinion is excluded, there is evidence in

the record of irreparable harm from the Mill's alleged excess emissions.  First, the Government

---

[7]  As explained in the Memorandum in support of Westvaco's Motion for Summary Judgment
on the Unavailability of Equitable Relief, any harm to the environment Westvaco may have
caused on account of the DEP (and there has been none) ceased in 2005 when it sold the Mill
to NewPage.

argues that the Mill exceeded the limited "historic BACT" that Westvaco's own expert identifies. Second, the Government argues that its witnesses have offered "general opinions" about irreparable harm supposedly caused by the Luke Mill. *Daubert* Opp. at 19. None of the supposed evidence cited by the Government suffices to carry its burden under the *eBay* factors.

First, the fact that Westvaco's expert determined that there were relatively minor emissions above what he considered to be historic BACT for the Mill (amounting to approximately 570 tons per year) does not show irreparable injury. The Government cannot show that *any* increase in emissions constitutes irreparable harm. And none of the Government's experts relied on or even mentioned this exceedance in their reports, so this evidence does not save these experts' opinions. *See, e.g.*, *United States v. Certain Interests in Property in Borough of Brooklyn, Kings County, State of New York*, 326 F.2d 109, 116 n.4 (2d Cir. 1964) (evidence not relied on by expert cannot be used to establish that expert's credibility). But even if the Government's experts had relied on this evidence in rendering their opinions, this evidence is not sufficient because none of them have used it to trace any harm to the Luke Mill.

The Government also relies on other "general opinions" to make its showing of irreparable harm. These opinions are largely irrelevant and entirely insufficient. For example, the Government asserts that it has offered evidence about the mechanism by which SO2 emissions form fine particulate matter and the possible health effects of that particulate matter. *Daubert* Opp. at 18-19. But this evidence does nothing to establish whether or not there were excess emissions from the Mill and, if so, whether those excess emissions have caused any actual harm. In the absence of any showing of excess emissions, this evidence is little more than background information with no connection to Westvaco or the Luke Mill.

The Government also offers various pieces of testimony from the expert opinion of James Webb, regarding streamwater impacts of SO2. *Daubert* Opp. at 18, 20. But Mr. Webb's opinion is explicitly based on Dr. Staudt's estimates of excess emissions. *See* Irreparable Harm Memorandum at 3 (Rec. Doc. 303) (pages 39-41 of the expert report of James "Rick" Webb, showing reliance on excess emissions calculations derived from Dr. Staudt). Further, as Westvaco noted in its Memorandum in support of its Motion for Summary Judgment on the Unavailability of Equitable Relief, Mr. Webb was unable to tie any of the effects he identified to emissions from the Luke Mill. *See* Equitable Relief Memorandum at 10 (Doc. No. 305) (quoting Webb Deposition at 181:21-182:21, that it is not possible "to isolate the . . . degree of harm associated with a single source"). Finally, none of the evidence of effects cited by the Government distinguishes effects of pre-2005 emissions from post-2005 emissions. This is a critical point, since as noted in Westvaco's Equitable Relief Memorandum, a former owner is not responsible for the effects of emissions from a facility it no longer owns. *Id*. at 9-12. The Government's evidence of irreparable harm is entirely founded upon Dr. Staudt's opinion about the Mill's alleged excess emissions. If that opinion is excluded, the Government cannot make a showing that it is entitled to injunctive relief.

### III.   CONCLUSION

For the reasons expounded in Westvaco's Memorandum in support of its *Daubert* Motion and for the foregoing reasons, this Court should exclude all of Dr. Staudt's reports, opinions, and testimony related to historic BACT because they fail to satisfy the requirements of Rule 702 of the Federal Rules of Evidence and the *Daubert* standard. The Court should also exclude Dr. Staudt's opinions concerning excess emissions from the No. 25 Power Boiler because they are based upon his opinion concerning historic BACT. And, accordingly, for the reasons expounded in Westvaco's Memorandum in support of its Motion for Summary Judgment on Lack of Evidence of Irreparable

Harm, and for the foregoing reasons, the Court should grant Westvaco's motion for summary judgment.

Respectfully submitted,

Dated:  July 25, 2012

_____/s/_____

Raymond B. Ludwiszewski (Bar No. 14905)
*rludwiszewski@gibsondunn.com*
Charles H. Haake (*pro hac vice*)
*chaake@gibsondunn.com*
Justin A. Torres (*pro hac vice*)
*jtorres@gibsondunn.com*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-8500
(202) 955-8500 (voice)
(202) 467-0539 (facsimile)

*Counsel for Defendant Westvaco Corporation*

17

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2012, a true and correct copy of the foregoing Reply of Westvaco Corporation to United States' Combined Opposition to Westvaco Corporation's *Daubert* Motion to Exclude the Reports, Opinions, and Testimony of Dr. James E. Staudt Re "Historic Bact" and Excess Emissions from the No. 25 Power Boiler and Westvaco Corporation's Motion for Summary Judgment on Lack of Evidence of Irreparable Harm was filed using the Court's electronic case filing system, which results in service on all counsel of record registered on the case management/electronic filing ("CM/ECF") system.


/s/

Charles H. Haake