# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Charles H. Haake
Direct: +1 202.887.3581
Fax: +1 202.530.9636
CHaake@gibsondunn.com

Client: 97854-00002

August 31, 2012

Honorable Marvin J. Garbis
Judge
United States District Court for the
District of Maryland
101 W. Lombard Street
Baltimore, MD 21201

Re:   *United States v. Westvaco*; Case No. MJG 00 CV 2602

Judge Garbis:

The purpose of this letter is to update the Court concerning further developments in the bankruptcy proceedings of Luke Paper Company and its parent, New Page Corporation.

As this Court will recall, the Government has cited to the Equity and Asset Purchase Agreement ("EAPA") between Westvaco and Luke Paper Company as a basis for distinguishing the three recent district court cases addressing the availability of equitable relief in a circumstance where a defendant alleged to have violated the PSD provisions of the Clean Air Act has sold the modified facility to a third party. *United States v. Midwest Generation, LLC*, 781 F. Supp. 2d 677 (N.D. Ill. 2011); *United States v. EME Homer City Generation, LP*, 823 F. Supp. 2d 274 (W.D. Pa. 2011); *New Jersey v. Reliant Energy Mid-Atl. Power Holdings, LLC*, No. 07-5298, 2009 WL 3234438 (E.D. Pa. Sept. 30, 2009).

During the August 15 hearing on the motions for summary judgment, the parties discussed the fact that LPC had informed Westvaco of its intent to reject the EAPA in its bankruptcy and the impact such rejection would have on the Government's argument. Transcript of Motions Hearing (August 15, 2012) at 67:15-24; 70:5-21. At the time of the hearing, however, LPC had not formal moved to reject the AEPA, and the status of that agreement was unclear. Id. at 67:15-24; 69:9-19 ("MS. GROFF: Rejection of the contract is something that has been discussed among the various interested parties. No decision was made, as far as I know, to this date.").

On Thursday, August 23, 2012, LPC took steps to formally reject the AEPA by filing in the Bankruptcy Court a Motion for Order Pursuant to Section 365(a) of the Bankruptcy Code Authorizing Rejection of Executory Contract With MeadWestvaco Corporation. A copy of

GIBSON DUNN

Honorable Marvin J. Garbis
August 31, 2012
Page 2

this motion is attached hereto. In its motion, LPC argues that the EAPA is executory in nature and that it may therefore be rejected under the Bankruptcy Code. A hearing on LPC's Motion has been set for September 11, 2012.

Respectfully Submitted,

*/s/ Charles H. Haake*

Charles H. Haake

CHH/ama
Enclosures

cc: All Counsel of Record (via ECF)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
                                                            :
*In re*                                                     :    Chapter 11
                                                            :
NEWPAGE CORPORATION, *et al.*,                              :    Case No. 11-12804 (KG)
                                                            :
     Debtors.[1]                                            :    Jointly Administered
                                                            :
------------------------------------------------------------x

Objection Deadline: September 4, 2012, at 4:00 p.m. (prevailing Eastern time)
Hearing Date: September 11, 2012, at 11:00 a.m. (prevailing Eastern time)

### DEBTORS' MOTION FOR ORDER PURSUANT TO SECTION 365(a) OF THE BANKRUPTCY CODE AUTHORIZING REJECTION OF EXECUTORY CONTRACT WITH MEADWESTVACO CORPORATION

NewPage Corporation ("NewPage") and those of its title 11 subsidiaries and affiliates that are chapter 11 debtors and debtors in possession (collectively with NewPage, the "Debtors") submit this motion (the "Motion") for an order authorizing NewPage's rejection of that certain Equity and Asset Purchase Agreement between Maple Acquisition LLC ("Maple"), a predecessor to NewPage, and MeadWestvaco Corporation ("MeadWestvaco"), dated January 14, 2005, as amended (the "EAPA"). In support of this Motion, the Debtors respectfully represent:

### Jurisdiction and Venue

1.  This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases, and each Debtor's federal tax identification number, are: Chillicothe Paper Inc. (6154), Escanaba Paper Company (5598), Luke Paper Company (6265), NewPage Canadian Sales LLC (5384), NewPage Consolidated Papers Inc. (8330), NewPage Corporation (6156), NewPage Energy Services LLC (1838), NewPage Group Inc. (2465), NewPage Holding Corporation (6158), NewPage Port Hawkesbury Holding LLC (8330), NewPage Wisconsin System Inc. (3332), Rumford Paper Company (0427), Upland Resources, Inc. (2996), and Wickliffe Paper Company LLC (8293). The Debtors' corporate headquarters is located at 8540 Gander Creek Drive, Miamisburg, OH 45342.

## NewPage's Businesses

2.  The Debtors and their non-title 11 debtor subsidiaries and affiliates (the "Company") comprise the largest coated paper manufacturer in North America, based on production capacity. Headquartered in Miamisburg, Ohio, NewPage is the Company's primary operating subsidiary and directly and indirectly owns the other Debtors and various other affiliated non-debtor entities. The Company's mills primarily produce coated paper, typically used in magazines, magazine covers and inserts, corporate annual reports, high-end advertising brochures, direct mail advertising, coated labels, catalogs, and textbooks. Although the Company also manufactures supercalendered paper, uncoated paper, specialty labels, and newsprint, coated paper represented approximately 80% of its net sales for the year ended December 31, 2011.

3.  Non-title 11 debtor NewPage Port Hawkesbury Corp., which owns a mill in Port Hawkesbury, Canada, commenced proceedings under Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, in the Supreme Court of Nova Scotia, in Halifax, Nova Scotia, on September 9, 2011.

## Background

*The Debtors' Bankruptcy Cases*

4.  On September 7, 2011 (the "Commencement Date"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession as authorized by sections 1107(a) and 1108 of the Bankruptcy Code.

5.  On September 8, 2011, this Court entered an order authorizing the joint administration of the Debtors' chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of

DOCS_DE:182576.1 59998-001

Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

6. On September 21, 2011, the Office of the United States Trustee (the "U.S. Trustee") appointed a statutory creditors' committee pursuant to section 1102 of the Bankruptcy Code (the "Committee").

7. On June 21, 2012, MeadWestvaco, MeadWestvaco Virginia Corporation, and MW Custom Papers LLC filed a complaint (the "Complaint") against NewPage, NewPage Energy Services LLC, Upland Resources Inc., Rumford Paper Co., Wickliffe Paper Company LLC, and Luke Paper Co. alleging (i) the EAPA has been substantially performed and thus is not executory and (ii) the plaintiffs are entitled to damages for the Debtors' postpetition breach of the EAPA.

*The Equity and Asset Purchase Agreement*

8. On or about January 14, 2005, MeadWestvaco and Maple entered into the EAPA, under which MeadWestvaco agreed to convey to Maple certain assets and equity interests comprising MeadWestvaco's coated papers and timber businesses. Maple later changed its name to Escanaba Timber LLC ("Escanaba"). As of the closing, Escanaba designated NewPage and certain of NewPage's subsidiaries as its "Designated Affiliates" to receive the assets, equity, obligations and contracts comprising and relating to the coated papers business. For ease of reference, the purchaser under the EAPA is hereafter referred to as "NewPage." The parties amended the EAPA by subsequent agreements dated as of April 22 and April 30, 2005.

9. The "Purchased Assets" conveyed to NewPage pursuant to EAPA § 1.2 include such items as real estate, factories, plants and equipment, machinery and related assets,

inventory, intellectual property, receivables, contracts, software, causes of action, and other assets. Also, EAPA § 1.4 allocates to NewPage a number of "Assumed Liabilities" relating to the transferred business that previously were the responsibility of MeadWestvaco. Further, the EAPA references, incorporates, and is accompanied by a number of additional agreements that are part of the same transaction.[2]

### Relief Requested

10. By this Motion, the Debtors request an order, substantially in the form attached hereto as Exhibit A, authorizing the rejection of the EAPA pursuant to section 365(a) of the Bankruptcy Code.

### Basis for Relief

11. The policy behind chapter 11 of the Bankruptcy Code is the "ultimate rehabilitation of the debtor." *Nicholas v. United States*, 384 U.S. 678, 687, 86 S. Ct. 1674, 16 L. 2d. 2d 853 (1966). The Bankruptcy Code, therefore, allows debtors in possession, "subject to the court's approval, [to] assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). See *also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521-22 (1984); *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992); *Interface Group-Nevada v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 145 F.3d 124, 136 (3d Cir. 1998); *Computer Sales Int'l, Inc. v. Federal Mogul (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003); *Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 386 (2d Cir. 1997). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v.*

---

[2] The Debtors agree with MeadWestvaco that the EAPA and all its various supplemental agreements identified in the Complaint constitute one, integrated agreement. See Complaint by MeadWestvaco Corporation ¶¶ 13, 14 [Docket No. 1855].

4

DOCS_DE:182576.1 59998-001

*Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (citing 2 COLLIER ON BANKRUPTCY ¶ 365.01[1] (15th ed. 1993)).

***The EAPA is an Executory Contract***

12. The Bankruptcy Code does not define "executory contract." "Relevant legislative history demonstrates that Congress intended the term to mean a contract 'on which performance is due to some extent on both sides.'" *In re Exide Technologies*, 607 F.3d 957, 962 (3d Cir. 2010) (quoting H.R. Rep. No. 95-595, 347 (1977)). *See also In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 238 (3d Cir. 1995) ("The legislative history of § 365 suggests a broad reading of 'executory.'"). With this in mind, the Third Circuit has adopted the following definition: "An executory contract is a contract under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *In re Exide Technologies*, 607 F.3d at 962 (quoting *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989)). To conduct this determination, contract principles under relevant nonbankruptcy law are considered. *See Gen DataComm Industries, Inc. v. Arcara, et al. (In re Gen. DataComm Industries, Inc.)*, 407 F.3d 616, 623; *In re Columbia Gas*, 50 F.3d at 240 n.10.

13. As it is the forum selected in the EAPA's governing law provision, New York provides the relevant nonbankruptcy law. Under New York law, "a material breach has been defined as one which would justify the other party to suspend his own performance or a breach which is so substantial as to defeat the purpose of the entire transaction." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 895 (2d Cir. 1976) (citing 12 Williston on Contracts, § 1469 at 186 (3rd ed. 1970)). New York's high court has instructed how to determine when a party has rendered substantial performance:

> There is no simple test for determining whether substantial performance has been rendered and several factors must be considered, including the ratio of the performance already rendered to that unperformed, the quantitative character of the default, the degree to which the purpose behind the contract has been frustrated, the willfulness of the default, and the extent to which the aggrieved party has already received the substantial benefit of the promised performance.

*Hadden v. Consolidated Edison Co.*, 312 N.E.2d 445, 449 (N.Y. 1974). Whether a party has substantially performed is "usually a question of fact and should be decided as a matter of law only where the inferences are certain." *Merrill Lynch & Co. Inc. v. Allegheny Energy Inc.*, 500 F.3d 171, 186 (2d Cir. 2007).

14. Here, the EAPA is executory because substantial obligations remain on both sides of the contract. NewPage agreed pursuant to the EAPA, *inter alia*, to (i) assume certain ongoing workers' compensation liabilities, (ii) provide certain ongoing services to the MeadWestvaco mill located in Wickliffe, Kentucky,[3] and (iii) assume certain ongoing indemnification liabilities for asbestos claims. MeadWestvaco, on the other hand, agreed pursuant to the EAPA, *inter alia*, to (i) assume certain ongoing indemnification liabilities for environmental claims and (ii) assume certain ongoing indemnification liabilities regarding claims against the mill located in Luke, Maryland. The failure of either party to complete any of the above remaining obligations would constitute a material breach excusing performance of the other party. Indeed, MeadWestvaco has filed the Complaint against the Debtors for breach of the EAPA, a tacit acknowledgment that the Debtors' remaining obligations under the EAPA are substantial.

---

[3] These obligations arise from the integrated Wickliffe Services Agreement, dated as of April 30, 2005, between MeadWestvaco Virginia Corporation and Wickliffe Paper Company. Absent rejection, the Wickliffe Services Agreement expires in 2015 unless MeadWestvaco would have exercised its option to renew through 2025.

### *The Debtors Should be Permitted to Reject the EAPA*

15.     Under section 365(a) of the Bankruptcy Code, the standard for rejection of executory contracts and unexpired leases is whether such exercise by a debtor is conducted with reasonable business judgment and provides a benefit to the estate. *See Bildisco & Bildisco*, 465 U.S. at 523 (recognizing the business judgment standard used to approve rejection of executory contracts); *see also Fed. Mogul Global*, 293 B.R. at 126; *In re Trans World Airlines, Inc.*, 261 B.R. 103, 123 (Bankr. D. Del. 2001) ("the focus [in analyzing a lease rejection motion] is the benefit to the debtor's estate"). Thus, a court must examine the Debtors' decision to reject an executory contract under the business judgment rule to determine if rejection would benefit the estate.

16.     The business judgment rule mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice. *See In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003); *see also Fed. Mogul Global, Inc.*, 293 B.R. at 126 ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion.").

17.     By rejecting the EAPA, NewPage expects to save approximately $5.2 million from discontinued workers' compensation liabilities and $86,000 per year from related surety bond reimbursements, approximately $50,000 per month above currently reimbursed expenses from discontinued services at the mill located in Wickliffe, Kentucky, and approximately $3.8 million from discontinued indemnification liabilities for asbestos claims.

18.     In an effort to maximize the value of its estate and reduce its administrative costs in its chapter 11 case, NewPage has reviewed its overall operations and has

7

determined, in its business judgment, that the EAPA is burdensome, provides no economic value to its estate, and should be rejected. Nothing in this Motion shall affect the rights of any counterparty to the EAPA to file claims for rejection damages, if applicable, and the Debtors retain all rights to object to any such claims, as appropriate.[4]

### Reservation of Rights

19. Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors or a waiver of the Debtors' rights to dispute any claim. The Debtors expressly reserve their rights to contest any claim with respect to the EAPA in accordance with applicable nonbankruptcy law. The Debtors further reserve any and all rights to assert any claims or counterclaims against any of the counterparties to the EAPA or to seek recovery of any overpayments that may have been made in connection with the EAPA.

### Notice

20. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided by first-class mail to the following parties: (i) the Office of the U.S. Trustee; (ii) attorneys for JPMorgan Chase, N.A., as administrative agent for the debtor in possession financing; (iii) attorneys for Wells Fargo Capital Finance LLC, as administrative agent for the prepetition senior secured revolver; (iv) attorneys for Bank of New York Mellon, as indenture trustee for the 11.375% senior secured first-lien notes due 2014; (v) attorneys for Wilmington Trust, National Association, as indenture trustee for the 10% fixed rate senior secured second lien notes due 2012 and the floating rate senior secured second lien notes due 2012; (vi) attorneys for HSBC Bank USA, National Association, as the indenture trustee for

---

[4] In an abundance of caution, if the EAPA has been substantially performed by MeadWestvaco and the Debtors and thus is no longer executory as MeadWestvaco argues in its Complaint, then MeadWestvaco simply holds a prepetition claim against the Debtors' estates for any remaining obligations of NewPage. *See Complaint* ¶ 24 [Docket No. 1855].

the 12% senior unsecured subordinated notes due 2013; (vii) attorneys for U.S. Bank, National Association, as the indenture trustee for the floating rate senior unsecured PIK notes due 2013; (viii) attorneys for Deutsche Bank Trust Company Americas, as indenture trustee for the floating rate senior unsecured PIK notes due 2015; (ix) attorneys for the informal group of certain holders of the 10% fixed rate senior secured second lien notes and floating rate senior secured second lien notes; (x) attorneys for the Committee; (xi) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b), and (xii) counterparties to the EAPA. The Debtors submit that no other or further notice need be provided.

*[Remainder of page intentionally left blank]*

## Conclusion

WHEREFORE the Debtors respectfully request an order (i) authorizing the rejection of the EAPA; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: August 23, 2012  
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*

Laura Davis Jones (Bar No. 2436)  
Michael R. Seidl (Bar No. 3889)  
Timothy P. Cairns (Bar No. 4228)  
919 N. Market Street, 17th Floor  
P.O. Box 8705  
Wilmington, Delaware 19899-8705 (Courier 19801)  
Telephone: 302.652.4100  
Facsimile: 302.652.4400

-and-

Martin J. Bienenstock  
Judy G.Z. Liu  
Philip M. Abelson  
PROSKAUER ROSE LLP  
Eleven Times Square  
New York, New York 10036  
Telephone: 212.969.3000  
Facsimile: 212.969.2900

*Co-Attorneys for the Debtors and Debtors in Possession*

**PLEASE TAKE FURTHER NOTICE** THAT IN THE EVENT THAT A TIMELY OBJECTON OR OTHER RESPONSE IS RECEIVED TO THE MOTION, A HEARING TO CONSIDER THE RELIEF SOUGHT IN THE MOTION WILL BE HELD ON **SEPTEMBER 11, 2012, AT 11:00 A.M. PREVAILING EASTERN TIME** BEFORE THE HONORABLE KEVIN GROSS, UNITED STATES BANKRUPTCY JUDGE, AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 NORTH MARKET STREET, SIXTH FLOOR, COURTROOM 3, WILMINGTON, DELAWARE 19801.

Dated: August 23, 2012

PACHULSKI STANG ZIEHL & JONES LLP

/s/ signature

Laura Davis Jones (Bar No. 2436)
Michael R. Seidl (Bar No. 3889)
Timothy P. Cairns (Bar No. 4228)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  302.652.4100
Facsimile:  302.652.4400

-and-

PROSKAUER ROSE LLP
Martin J. Bienenstock
Judy G.Z. Liu
Philip M. Abelson
Eleven Times Square
(Eighth Avenue & 41st Street)
New York, New York 10036-8299
Telephone:  212.969.3000
Facsimile:  212.969.2900

*Co-Attorneys for the Debtors and Debtors in Possession*

# EXHIBIT A
**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                            :
*In re*                                     :    Chapter 11
                                            :
NEWPAGE CORPORATION, *et al.*,              :    Case No. 11-12804 (KG)
                                            :
   Debtors.[1]                              :    Jointly Administered
                                            :    Related Docket No. _____
---------------------------------------------------------------x

## ORDER AUTHORIZING REJECTION OF EXECUTORY CONTRACT WITH MEADWESTVACO CORPORATION

Upon the motion dated August 23, 2012 (the "Motion"),[2] of NewPage Corporation ("NewPage") and those of its title 11 subsidiaries and affiliates that are chapter 11 debtors and debtors in possession (collectively with NewPage, the "Debtors"), for an order authorizing the rejection of that certain Equity and Asset Purchase Agreement between Maple Acquisition LLC, a predecessor to NewPage, and MeadWestvaco Corporation, dated January 14, 2005, as amended (the "EAPA"), all as more fully described in the Motion; and the Court having subject matter jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and no trustee or examiner having been appointed in these chapter 11 cases; and due and proper notice of the Motion having been provided, and it

---

[1] The Debtors in these chapter 11 cases, and each Debtor's federal tax identification number, are: Chillicothe Paper Inc. (6154), Escanaba Paper Company (5598), Luke Paper Company (6265), NewPage Canadian Sales LLC (5384), NewPage Consolidated Papers Inc. (8330), NewPage Corporation (6156), NewPage Energy Services LLC (1838), NewPage Group Inc. (2465), NewPage Holding Corporation (6158), NewPage Port Hawkesbury Holding LLC (8330), NewPage Wisconsin System Inc. (3332), Rumford Paper Company (0427), Upland Resources, Inc. (2996), and Wickliffe Paper Company LLC (8293). The Debtors' corporate headquarters is located at 8540 Gander Creek Drive, Miamisburg, OH 45342.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing, and all of the proceedings had before the Court; and any objections to the Motion having been withdrawn or overruled; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is:

ORDERED that the Motion is granted as may be modified herein; and it is further

ORDERED that the EAPA shall be rejected effective as of the date of this Order; and it is further

ORDERED that nothing in this Order shall affect the right of any counterparty to the EAPA to file claims for rejection damages, if applicable, and the Debtors shall retain all rights to object to any such claims, as appropriate; and it is further

ORDERED that pursuant to this Court's *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, dated December 13, 2011 [Docket No. 716] (the "Bar Date Order"), any holder of a claim arising from the rejection of the EAPA must file a proof of claim based on such rejection on or before the date that is 30 days after the entry of this Order; and it is further

ORDERED that nothing in the order shall constitute any waiver of any claims or defense by the Debtors that they have or may have against any of the counterparties to the EAPA; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

2

ORDERED that this Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

Dated: _____, 2012
      Wilmington, Delaware

                                                  _____
                                                  The Honorable Kevin Gross
                                                  Chief Judge, United States Bankruptcy Court