```
             IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA         *

          Plaintiff              *

          vs.                    *   CIVIL ACTION NO. MJG-00-2602

WESTVACO CORPORATION             *

          Defendant              *

*    *    *    *    *    *    *    *    *
           MEMORANDUM AND ORDER RE: DAUBERT MOTION
```

The Court has before it Westvaco Corporation's Daubert Motion to Exclude the Reports, Opinions, and Testimony of Dr. James E. Staudt Re "Historic BACT[1]" and Excess Emissions From The No. 25 Power Boiler [Document 302], Westvaco Corporation's Motion for Summary Judgment on Lack of Evidence of Irreparable Harm [Document 303] and the materials submitted relating thereto.  The Court has held a hearing and had the benefit of the arguments of counsel.

I.   SUPPLEMENTARY[2] BACKGROUND

The Government contends that Westvaco caused excess sulfur dioxide ("$SO_2$") pollution when it violated the Clean Air Act by making a "major modification" to the Luke Mill without first

---

[1] Best Available Control Technology ("BACT").
[2] See Background Statement Re: Pending Summary Judgment Motions issued herewith.

obtaining a Prevention of Significant Deterioration ("PSD") permit or installing BACT.

The Government contends it will show that, had Westvaco obtained a PSD permit, the No. 25 Power Boiler would have been subject to a BACT requirement limiting $SO_2$ emissions from the boiler to a level below the actual emissions level. The Government proffers the testimony of Dr. James Staudt ("Staudt") providing his opinion of what the BACT would have been had Westvaco applied for a PSD permit in connection with the Digester Expansion Project ("DEP").

By the instant motion, Westvaco seeks an Order excluding Staudt's testimony.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement: The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored

glasses, but must view it realistically. After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). Thus, in order to defeat a motion for summary judgment, "the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

When evaluating a motion for summary judgment, the Court must bear in mind that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Rule 1 of the Federal Rules of Civil Procedure).

III. DISCUSSION

    A.   The BACT Determination

Section 165 of the Clean Air Act provides that construction on a major new source or modification cannot commence unless the

"proposed facility is subject to the best available control technology for each pollutant subject to regulation under this chapter emitted from, or which results from, such facility." 42 U.S.C. § 7475(a)(4).

At the time of the commencement of the DEP in 1981, BACT was defined as:

> [A]n emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this act emitted from or which results from any major emitting facility, which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility through application of production processes and available methods, systems, and techniques, including fuel cleaning or treatment or innovative fuel combustion techniques for control of such pollutant. In no event shall application of "best available control technology" result in emissions of any pollutants which will exceed the emissions allowed by any applicable standard established pursuant to section 111 or 112 of this Act.

Clean Air Act Amendments of 1977, Pub. L. No. 95-95, sec. 127, § 169(3), 91 Stat. 685, 741.2.

Thus, the BACT requirement does not actually mandate the use of the "best available control technology."  Rather, it constitutes an emission limitation expressed in terms of pounds of pollutant per million Btu of heat input (lbs./MMBtu).

4

Moreover, the determination of the BACT for a given source is an administrative "judgment call" based upon scientific, economic and perhaps other considerations. That is, the BACT limitation is to be "based on the maximum degree of reduction of each pollutant" that is "achievable," "taking into account energy, environmental, and economic impacts and other costs." Id.

In the early 1980's, when Westvaco would have applied for a PSD, the EPA was determining BACT utilizing a "Bottom Up" method. Under this method, one starts at the "bottom" with a "base case" that is the pollution control strategy that would be used in the absence of a BACT requirement. Then the EPA considers increasing levels of physically achievable more stringent strategies to determine the most stringent that would not have unreasonable energy, environmental, and economic impacts and other costs.

In the later 1980's, EPA changed its method of determined BACT to the "Top Down" method. Under this method, potential control strategies are identified and ranked in order of stringency. The EPA then starts at the "top" and selects the limitation resulting from the most stringent strategy that could be used unless the applicant demonstrates that it has unreasonable energy, environmental, or economic impacts. If the

most stringent strategy is rejected, the process continues until the most stringent control that does not have unreasonable energy, environmental, or economic impacts is determined and selected.

### B. The Staudt Testimony

The Government proffers Staudt's opinion that, had Westvaco applied for a PSD permit in regard to the DEP, the EPA would have imposed a BACT emissions limitation of .35 lbs./MMBtu of $SO_2$.

In his initial report, Staudt stated that he reached his opinion using the Top-Down method for determining BACT. Westvaco confronted Staudt with the fact that, at the time of the hypothetical PSD permit application, the EPA was still utilizing the Bottom Up method. Staudt testified that this fact did not change his opinion; he opined that EPA would have determined the same BACT limitation under the Bottom Up method, and he submitted a second report in support of this view.

#### 1. Admission Standard

Rule 702 of the Federal Rules of Evidence provides:

> "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

> opinion" if the following three conditions are met:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The role of the trial court under Rule 702 is to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). This requirement applies to all expert testimony offered under Rule 702 of the Federal Rules of Evidence, even if the testimony is not considered "scientific" in the traditional sense. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).

The issue to which the proffered testimony is directed is not a purely "scientific" one, nor one susceptible to an undisputedly "correct" answer. Rather the question presented is what would have been the "judgment call" (based upon scientific,

economic, and other factors) made by the EPA had Westvaco applied for a PSD permit in regard to the DEP.

Utilizing the principles recognized in Daubert and subsequent cases, the Court must determine whether the proffered opinions will be relevant, potentially reliable[3] and helpful to the Court as the trier of fact.  In other words, in the context of the instant case, to what extent does the proffered evidence sufficiently want in relevance, materiality or potential reliability to warrant the Court's refusing to consider the extent to which, if at all, it may be helpful once subjected to cross-examination and rebuttal.

### 2. Resolution

As discussed above, the Court must decide what BACT limitation, if any, the EPA would have imposed had Westvaco applied for a PSD permit in regard to the DEP.  Hence, the instant motion presents the question of whether Staudt's testimony, in whole or part, will be helpful to the Court in resolving that issue.

It appears that, had Westvaco applied for a PSD permit in the pertinent time period, the EPA would have made a BACT determination using the Bottom-Up method.  The Top-Down Method

---

[3] Of course, subject to cross-examination.

reaches BACT from the opposite direction from the Bottom-Up Method utilizing a different "burden of proof" scheme.  Staudt opines that that the Bottom-Up method, "properly applied" would inevitably yield the same result as the Top-Down method.

Even if that opinion were accepted as correct, the Court finds no reason to make its determination of what the EPA would have done by using the Top-Down Method rather than the Bottom-Up Method that would, in fact, have been utilized.  Indeed, it would be less than useful to go through the exercise of determining what would have been the "judgment call" made at each increment downward from the high end "most stringent strategy" when the question presented is what would have been the "judgment call" made at each increment upward from the low end "base case."

Furthermore, the fact that the EPA changed the method from Bottom-Up to Top-Down, and its expressed rationale, provides strong evidence that, in practice, the Bottom-Up method was yielding less stringent BACT limitations than the Top-Down method would have.

Thus, the Court will exclude Staudt's opinion as to the BACT determination that EPA would have made using the Top-Down method.

However, the Court will not exclude Staudt's opinion as to what would have been the BACT determination using the Bottom-Up method.  The Court does not find Staudt's erroneous use of the Top-Down method to justify excluding his Bottom-Up method opinion.  Certainly, his error in this regard will warrant inquiry on cross-examination and will be taken into account appropriately in determining the ultimate factual question presented.

Furthermore, the Court finds no reason to exclude Staudt's testimony constituting rebuttal of Westvaco's expert testimony.

### C.   Irreparable Harm

Westvaco contends that, if the Court were to exclude Staudt's testimony, the Government would be unable to prove irreparable harm due to the absence of proof of increased emissions from the Luke Mill.

The Court is not excluding Staudt's testimony.  Moreover, the Government has made irreparable harm arguments based on evidence other than Staudt's opinion, including the testimony of Westvaco's own expert that is sufficient to avoid summary judgment.[4]

---

[4] The summary judgment question is whether a reasonable fact finder could find for the non-movant. E.g., Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

IV. CONCLUSION

For the foregoing reasons:

1. Westvaco Corporation's Daubert Motion to Exclude the Reports, Opinions, and Testimony of Dr. James E. Staudt Re "Historic BACT" and Excess Emissions From The No. 25 Power Boiler [Document 302] is GRANTED IN PART.

    a. Staudt's opinion as to the BACT determination that EPA would have made using the Top-Down method is excluded.

    b. The balance of Staudt's testimony is not excluded.

2. Westvaco Corporation's Motion for Summary Judgment on Lack of Evidence of Irreparable Harm [Document 303] is DENIED.

SO ORDERED, on Friday, September 14, 2012.

/s/
Marvin J. Garbis
United States District Judge