```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA         *

          Plaintiff              *

          vs.                    *   CIVIL ACTION NO. MJG-00-2602

WESTVACO CORPORATION             *

          Defendant              *

*    *    *    *    *    *    *    *    *
```

MEMORANDUM AND ORDER RE: EQUITABLE RELIEF

The Court has before it Defendant Westvaco Corporation's Motion for Summary Judgment on the Unavailability of the Government's Proposed Equitable Relief [Document 305] and the materials submitted relating thereto. The Court has held a hearing and had the benefit of the arguments of counsel.

I.   SUPPLEMENTARY[1] BACKGROUND

The Court has found that Westvaco violated the Clean Air Act by making a "major modification" to the Luke Mill without first obtaining a Prevention of Significant Deterioration ("PSD") permit. Consequently, the Government argues, Westvaco failed to install Best Available Control Technology ("BACT"), and the Luke Mill has emitted and continues to emit excess

---

[1] See Background Statement Re: Pending Summary Judgment Motions issued herewith.

sulfur dioxide ("$SO_2$"), threatening human health and the environment.

In this case, the Government asks the Court to provide injunctive relief requiring:

1. [T]he Luke Mill to comply with the CAA[2] by obtaining a PSD permit containing a current-day BACT limit for $SO_2$ from the No. 25 power boiler and
2. Westvaco to mitigate the harm resulting from the Mill's illegal SO2 emissions.

Gov't Opp'n 2 [Document 312].

Westvaco contends that the Court cannot grant any equitable relief whatsoever in the instant case, essentially because Westvaco no longer owns the Luke Mill. By the instant motion, Westvaco seeks summary judgment, dismissing all claims.

II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement: The

---

[2] Clean Air Act.

Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  Thus, in order to defeat a motion for summary judgment, "the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her."  Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

When evaluating a motion for summary judgment, the Court must bear in mind that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex, 477 U.S. at 327 (quoting Rule 1 of the Federal Rules of Civil Procedure).

III. DISCUSSION

    A.    Factual Setting

Westvaco, as owner of the Luke Mill, undertook the Digester Expansion Project ("DEP"). The Court has found that Westvaco violated the Clean Air Act, and the Court assumes for present purposes that this violation caused excess emissions of a pollutant, sulfur dioxide ("$SO_2$").

In 2005, Westvaco sold the Luke Mill to Luke Paper Company ("LPC"). In connection with the sale, Westvaco agreed to "retain the defense and resolution" of the instant case, "including, without limitation, the design, installation, and construction of any pollution control equipment required as a result of any resolution thereof." Asset Purchase Agreement Schedule 11.2(a)(viii) ¶ 1, Mot. App. F [Document 305]. Westvaco also agreed to pay operating costs of any ordered new control technology that exceeded $2 million per year for the first five years. Id. ¶ 1.B. These agreements are collectively referred to herein as "the Luke Mill Undertaking."

In 2011, LPC[3] filed for bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. On August 27, 2012, the Bankruptcy Court issued an Order providing that the instant case is "not stayed by operation of the automatic

---

[3] Together with its parent corporation, NewPage Corporation and other subsidiaries of NewPage.

4

stay imposed by the Bankruptcy Code, 11 U.S.C. § 362 or the [Bankruptcy Court's] Stay Order." Status Report 2, Aug. 28, 2012 [Document 321]. On August 31, 2012, LPC[4] filed a Section 365(a)[5] motion seeking authorization to reject the contract including the Luke Mill Undertaking. Status Report 1, Aug. 31, 2012 [Document 322]. The motion is pending at the time of this writing.

B.  Impossibility

1.  Change of Ownership

Westvaco seeks to have the Court follow three district court decisions by "courts presented with facts indistinguishable from this case." Def.'s Reply 1 [Document 318].  As stated by Westvaco, in each case

> a defendant alleged to have violated the PSD provisions of the Clean Air Act sold the modified facility to a third party that continued to operate it. In each case, the court held as a matter of law that injunctive relief was unavailable because (a) the party currently operating the facility was not guilty of any violation of the Clean Air Act, and (b) the court lacked equitable authority to order a defendant to reconstruct or operate a facility, directly or indirectly, that the defendant no longer owned.

---

[4] Together with NewPage and other Debtors.
[5] Bankruptcy Code.

Id. (citing United States v. Midwest Generation, LLC, 781 F. Supp. 2d 677 (N.D. Ill. 2011); United States v. EME Homer City Generation, LP, 823 F. Supp. 2d 274 (W.D. Pa. 2011); New Jersey v. Reliant Energy Mid-Atl. Power Holdings, LLC, No. 07-5298, 2009 WL 3234438 (E.D. Pa. Sept. 30, 2009)).

The Court, however, cannot say, on the current record, that the material facts presented in the three cases are indistinguishable from the facts that will be found in the instant case.  For example, in the instant case, there is a genuine issue of material fact whether, in the context of injunctive relief in the instant case, the Luke Mill Undertaking is the functional equivalent of ownership.

To the extent that these decisions are based upon a finding that it would be impossible for the defendant to comply, the instant case may be distinguishable.  By no means does the evidence of record establish that the Court could not fashion any possible injunction requiring action by Westvaco that would be possible for it to perform.  Even if the Luke Mill Undertaking is rescinded, the position of LPC regarding an Order requiring Westvaco to take action with respect to the Mill would be significant in any evaluation of an "impossibility" defense contention.

Moreover, the Government presents a nonfrivolous argument that could lead this Court or an appellate court to disagree with these district court decisions.  Hence, the Court will not

terminate the instant case at the present stage in reliance upon these decisions.

### 2. Lack of Continuing Harm

Westvaco contends that no injunctive relief is possible because it is not causing any continuing harm.  However, the Court finds that there are genuine issues of material fact regarding the question of causation.  The Government has presented evidence to establish that Westvaco's past conduct is a cause of ongoing environmental harm.  On the Government's view of the evidence, had Westvaco not violated the Clean Air Act, there would have been, and would be now, less $SO_2$ emitted from the Luke Mill.  The Court may well, as a fact finder, ultimately agree with Westvaco but it cannot state that no reasonable fact finder could find for the Government on the issue.

### 3. Specific Injunctive Possibilities

The Court finds it unnecessary, and unproductive, to address Westvaco's contentions regarding various types of specific, theoretically possible, injunctive relief provisions. E.g., one requiring Westvaco now to apply for a PSD permit, one calling for a scrubber on Unit No. 24, etc.

Should the Court find for the Government, any injunction would be framed after careful consideration of specific provisions in light of the parties' respective positions. Even if Westvaco were correct as to each and every one of the specific potential provisions it has chosen to address in its motion, it has not established that regardless of the Court's factual findings it could not possibly draft any proper injunction.

### 4. Luke Paper Company

Westvaco contends that the Court cannot issue an order that would compel LPC to take any action that would trigger the Luke Mill Undertaking. For example, Westvaco argues, since the Court cannot order LPC to install a scrubber, Westvaco could not be required to install the scrubber by virtue of the Luke Mill Undertaking.

The Court will not rely on Westvaco to present the positions that LPC will take regarding the instant case. It suffices for the present to note that LPC may well take positions that would negate the contention altogether, for example, by consenting so that no compulsion would be necessary.

Westvaco contends that the Court cannot issue an order requiring it to compensate LPC or otherwise enforce the Luke

Mill Undertaking.  Of course, the instant case is not a lawsuit presenting contract claims by LPC against Westvaco for failure to comply with the Luke Mill Undertaking.  If an order of the Court should trigger the Luke Mill Undertaking and Westvaco should fail to meet its obligations thereunder, LPC would have the ability to enforce its rights in an appropriate forum.

However, the Court cannot foreclose the possibility that an action or failure to take action by Westvaco that violated the Luke Undertaking would also violate a Court Order.  Of course, whether there was a violation of an Order of the Court would, necessarily, turn upon the terms of the Order and the pertinent action or inaction.  The existence of potential issues as to some possible injunctive provisions does not mean that it will not be possible to draft any valid enforceable provisions.

IV.  CONCLUSION

For the foregoing reasons, Defendant Westvaco Corporation's Motion for Summary Judgment on the Unavailability of the Government's Proposed Equitable Relief [Document 305] is DENIED.

SO ORDERED, on Friday, September 14, 2012.

_____/s/_____
Marvin J. Garbis
United States District Judge