UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

------------------------------------------------------------x

UNITED STATES OF AMERICA,       :
       :
*Plaintiff*,       :
       :       Civil Action No.: MJG 00 CV 2602
-v-       :
       :
WESTVACO CORPORATION,       :
       :
*Defendant*.       :

------------------------------------------------------------x

## INTERVENOR LUKE PAPER COMPANY'S REPLY TO PLAINTIFF UNITED STATES' AND DEFENDANT WESTVACO'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Howard B. Epstein
Sami B. Groff
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY  10022
Telephone: 212.756.2000

*Attorneys for Luke Paper Company*

Dated: April 12, 2013

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**INTRODUCTION.** ................................................................................................................ **1**

**I.  PROPOSED CONCLUSIONS OF FACT** ........................................................................ **2**

    A.  Luke Will Not "Have to" Install a Scrubber on Power Boiler #25 Anyway ............... 2

    B.  Installation of Emissions Control Technology: Timing ............................................. 8

**II.  PROPOSED CONCLUSIONS OF LAW** .......................................................................... **8**

    A.  Luke May Not be Held Liable for Any Violations Asserted Here ............................. 8

    B.  Balancing of the Equities .......................................................................................... 10

**CONCLUSION.** .................................................................................................................. **11**

## <u>TABLE OF AUTHORITIES</u>

**<u>Pages</u>**

<u>Gasner v. Board of Supervisors</u>, 103 F.3d 351, 361 (4th Cir. 1996)............................................ 10

<u>Gibson v. Allstate Ins. Co.</u>, 64 Fed.Appx. 378, 2003 WL 21101723 (4th Cir. May 15, 2003) .... 10

<u>Hagerty Ins. Co. v. Cummings</u>, 2009 WL 1140034, * 3 (E.D.Mo. April 28, 2009) ................... 10

<u>Hunt Building Co. v. United States</u>, 61Fed. Cl. 243, 279-280 (Ct. Cl. 2004).............................. 10

<u>Indian River Recovery Co. v. The China</u>, 645 F.Supp. 141 (D.De. 1986) ................................... 10

<u>Monovis, Inc. v. Aquino</u>, 905 F.Supp. 1205, 1234-36 (W.D.N.Y. 1994).................................... 11

<u>New York v. Niagara Mohawk Power Corp.</u>, 263 F.Supp.2d 650 (W.D.N.Y. 2003)................... 9

<u>Ostergren v. Cuccinelli II</u>,  615 F.3d 263, 287-88 (4th Cir. 2010)................................................ 9

<u>U.S. v. EME Homer City Generation LP</u>, 823 F.Supp.2d 274 (W.D.Pa. 2011)  ......................... 9

<u>Unite Here Local 1 v. Thor Equities, LLC</u>, 2010 WL 2639691, * 3 (N.D.Ill. June 28, 2010)  .... 10

<u>United States v. Midwest Generation, LLC</u>, 694 F.Supp.2d 999 (N.D.Ill. 2010).......................... 9

<u>United States v. Westvaco Corp.</u>, 144 F.Supp.2d 439, 441 (D.Md. 2001) ................................... 9

## <u>INTRODUCTION</u>

Intervenor Luke Paper Company ("Luke") hereby respectfully submits its Reply to Plaintiff United States' and Defendant Westvaco's Proposed Findings of Fact and Conclusions of Law.  As stated in its opening post-trial papers, Luke takes no position as to whether a remedy of Best Available Control Technology ("BACT") should be ordered for the violations of the New Source Review Prevention of Significant Deterioration program of the Clean Air Act ("NSR" or "PSD") by Defendant Westvaco Corporation ("Westvaco") previously determined by this Court. As this Court has already held, Luke is *not* a successor to Westvaco's liability and is *not* liable for the violations of PSD at issue.  Luke has been joined as an Intervenor to this action only to provide the court with insight as to how proposed remedies will impact the Luke Mill and to help effectuate a remedy that may be imposed upon defendant Westvaco.  Memorandum and Order, April 7, 2011, Docket No. 279 at p.7 - 10.  Any order issued by the Court should make clear that the remedy is imposed on defendant Westvaco and not on Luke.  Though the government asserts that Luke should also be named to an order requiring action by Westvaco, the government cites no legal authority supporting its right to such an order against Luke.  The government has brought no claim against Luke and there is no case or controversy against it.  Rule 19 joinder is not a substitute for Article III jurisdiction.

The focus of the remedy phase of this trial should be on the determination of BACT for the PSD violation at issue.  But both the United States and Westvaco argue that in balancing the equities, the court should consider Luke's obligations under the Best Available Retrofit Technology ("BART") requirements of the Regional Haze Rule and the new $SO_2$ NAAQS.  These considerations are simply not relevant to the claims asserted in this litigation and should play no part in the court's determination.  In fact, as the testimony at trial has shown,

had BACT already been installed at the Luke Mill, Luke would not have any BART obligations today.

Nevertheless, as the government and Westvaco have raised these issues in their opening papers, Luke will respond to their proposed findings of fact and conclusions of law below.  The parties' continued focus on Luke's potential BART obligations, however, is nothing more than a transparent attempt to shift the burden of Westvaco's BACT compliance onto Luke's shoulders.  Such a shift would be substantially detrimental to the Mill and would be inequitable, particularly given the recent emergence of Luke from bankruptcy.  Any such attempt to have Luke shoulder Westvaco's burden should be rejected.

# I. PROPOSED CONCLUSIONS OF FACT

## A.  Luke Will Not "Have to" Install a Scrubber on Power Boiler #25 Anyway

1.  The Luke Mill, which employs approximately 870 people from its local area, is one of only two remaining large employers in the area.  Paugh Tr. 1/18/13 at 11:12-12:10.

2.  Luke, the owner of the Luke Mill, has just emerged from bankruptcy, and is currently analyzing the options for sulfur dioxide ("$SO_2$") emissions reductions.  Paugh Tr. 1/18/13 at 34:9-35:8, 36:3 -37:25.

3.  Contrary to the government's assertions at ¶¶ 437 and 456 of its Proposed Findings of Fact ("US PFOF"), it is not Luke's understanding that a scrubber will "have to" be installed on Power Boiler Number 25 at the Luke Mill for Luke to meet future BART requirements.  Paugh Tr. 1/18/13 at 27:12 – 29:19, 33:1-34:7.

2

4.   Contrary to Westvaco's assertions at ¶¶319-323 of its Proposed Conclusions of Law (" WV PCOL"), it is not a forgone conclusion that to comply with BART, "the Luke Mill will install the exact remedy that the Government is seeking in this case in exactly the same the timeframe."  Paugh Tr. 1/18/13 at 27:12 – 29:19, 33:1-34:7.

5.   Based on the current version of the final Regional Haze Rule and the Maryland SIP, by July 2017, the Luke Mill will be required to meet an emissions limit equivalent to .44 million pounds per BTU of $SO_2$ for the Number 25 Power Boiler, a 90% reduction in $SO_2$ emissions, to meet BART requirements.  LPC Ex.0005 at p. USWR1_00000412, Response 5; Paugh Tr. 1/18/13 at 33:1-34:7.

6.   These requirements may be met by the operation of a scrubber on the Number 25 Power Boiler, by operation of scrubbers on both power boilers (each at a lower removal efficiency to achieve a combined 90% equivalent reduction), or by another method that would achieve equivalent reductions.  Paugh Tr. 1/18/13 at 26:20-34:7.

7.   Contrary to Westvaco's assertions at ¶¶246-254 of its Proposed Findings of Fact ("WV PFOF"), Luke did not commit to installing a spray dry absorber ("SDA") or a circulating dry scrubber ("scrubber") on Power Boiler Number 25 to meet BART requirements.  Paugh Tr. 1/18/13 at 26:20-34:7; LPC Ex. 2; LPC Ex. 5 at USWR1_00000412.

8.   MANE-VU, a regulatory agency regional planning organization, established a 90% $SO_2$ emissions reduction as a presumptive level of reduction that would satisfy BART for large industrial boilers in its region.  Fernandez Tr. 12/10/12 at 76:13-77:3; Paugh Tr. 1/18/13 at 27:1-28:9.

9.  In a letter dated October 31, 2007, from Gary Curtis, Vice President of Luke Operations, to Brian Hug, Deputy Manager of the Air Quality Planning Program at the Maryland Department of the Environment ("MDE"), Luke explained that it "reviewed" the MANE-VU "presumptive levels of control" and proposed to comply with future BART requirements by reducing "emissions to the equivalent levels of 90% control of $SO_2$ emissions . . . for No. 25 power boiler within five years of EPA approval of Maryland's SIP."  LPC Ex. 2 at LPC 0042483.

10.  Luke committed to reductions "equivalent" to 90% emissions reductions levels from the No. 25 power boiler because it was not certain which method of control would be the "best fit for the Luke Mill" and the Mill did not want to be tied down to a particular choice of technology at that time.  Paugh Tr. 1/18/13 at 28:6-29:19.

11.  MDE accepted Luke's proposal.  Paugh Tr. 1/18/13 at 29:18-29:19.

12.  After MDE accepted Luke's proposal, MDE submitted its BART State Implementation Plan ("SIP") to the EPA for approval as a final rule.  EPA rejected Maryland's SIP and required sources to undergo a site specific five factor analysis.  Paugh Tr. 1/18/13 at 29:18-31:3.

13.  A five factor analysis was issued for the Luke Mill by a company called AECOM (the "AECOM report").  The AECOM report and the subsequent Maryland SIP based upon it, mistakenly stated that the Mill had committed to install an SDA or scrubber. This was not true.  Paugh Tr. 1/18/13 at 31:7-31:22; Fernandez Tr. 12/10/12 at 66:1-68:13.

4

14.   In response to this mistake, the Luke Mill submitted a comment to EPA during the public comment period for the approval of the new Maryland SIP.  LPC Ex. 2 at LPC 0042481-82; Paugh Tr. 1/18/13 at 31:25-32:23; Fernandez Tr. 12/10/12 at 68:14-69:3.

15.   The comment letter noted that the Maryland SIP approval mischaracterized the Mill's commitment, stated that the Mill actually committed to an "equivalent" 90% reduction, explained that this was necessary "due to operational circumstances at the mill, and in order to maintain the flexibility to reduce the plant emissions and/or operating costs in the most efficient and practical way possible," explained the concerns with corrosion in the tall stack if only one of the two power boilers is scrubbed, noted that "[f]uel switching, controlling both boilers or other methods may be better employed than just controlling the No. 25 boiler," and asked that the SIP approval "be amended to allow the flexibility needed by the mill to best meet the reductions offered in the October letter," which "meet the presumptive levels set by MANE-VU for industrial boilers."  LPC Ex. 2 at LPC 0042481-82; Paugh Tr. 1/18/13 at 31:25-32:23; Fernandez Tr. 12/10/12 at 68:14-69:17.

16.   EPA accepted this comment and incorporated it into the Final Rule, recognizing that, in complying with future BART requirements, Luke has flexibility as to how it will achieve the equivalent of 90% $SO_2$ reduction from the Number 25 Power Boiler.  LPC Ex. 5 at USWR1_00000412; Paugh Tr. 1/18/13 at 33:7-34:7; Fernandez Tr. 12/10/12 at 69:4-70:3.

17.   Specifically, Response 5 of the Final Rule states that EPA "inadvertently suggested that the Maryland Regional Haze SIP required the use of specific controls.  We agree with the Commenter that the Maryland Regional Haze SIP requires the NewPage Luke

5

Mill to meet the BART emission limits noted above but does not require the facility to install specific controls at Unit 25 to meet these limits."  LPC Ex. 5 at USWR1_00000412.

18.   Westvaco's proposed findings of fact in ¶¶248-251 of the WV PFOF are not relevant evidence and should be disregarded.  Westvaco's proffered interpretation of the AECOM report and its citation to Christina Fernandez' testimony go to what EPA "thought" in issuing its initial approval of the Maryland SIP prior to the public comment period. Whether or not that interpretation or testimony is correct, however, is simply not relevant because the documentary evidence shows that EPA, in its final approval, agreed with Luke that the BART emission limits noted in the rule do "not require the facility to install specific controls at Unit 25 to meet these limits."  LPC Ex. 5 at USWR1_00000412.

19.   It is the final rule that governs the facility's obligations.  Fernandez Tr. 12/10/12 at 65:15-65:25; Paugh Tr. 1/18/13 at 33:7-34:7.

20.   Westvaco's proposed finding of fact at ¶247 of the WV PFOF, that Luke committed to MDE to install either a scrubber or SDA to meet BART requirements, is inadmissible hearsay.  Luke objected to the admissibility of this testimony in its pretrial filing (Objections to Deposition Designations and Counterdesignations, Docket # 337) and at trial. Paugh Tr. 1/18/13 at 97:19-99:11.  Westvaco's proposed finding of fact is based on excerpts from the deposition testimony of Steven Lang, the lead Regulatory and Compliance Engineer at MDE with responsibility for the Luke Mill.  In the sections of Mr. Lang's deposition cited by Westvaco, he is asked whether Luke made a commitment to MDE to install a scrubber or SDA and he testifies that he has no personal knowledge of any such commitment.  Any understanding he has comes from other people's statements.  Specifically, Mr. Lang testifies

6

that he "wasn't in the [planning] groups" but that "[t]hat is what the planning people understand, that they have that commitment."  Def. RT Exh. 208 (Lang Depo.) at 76:1-77:1. In the very next question, which Westvaco neglects to cite, the hearsay nature of this testimony becomes even clearer.  Mr. Lang is asked whether there is a document confirming Luke's commitment and he answers:  "I haven't seen it in a document, but that's what the planning people say."  Id. at 77:2-77:9.  Later in the deposition, Mr. Lang testified that no one at the Luke Mill had ever informed him that they had committed to installation of either a scrubber or an SDA.  Id. at 121:5-121:10.  Accordingly, the court should reject ¶247 of the WV PFOF because the Lang testimony cited by Westvaco is hearsay, based not upon Lang's knowledge but upon what "the planning people say."  Westvaco offers Lang's testimony to prove that Luke made certain commitments to MDE but Lang explicitly and repeatedly states that he has no personal knowledge of the truth of that assertion.

     21.  Additionally, the Lang testimony cited by Westvaco is taken out of context.  Westvaco fails to cite the continuation of the Lang testimony, in which Mr. Lang explains that the only document he has is a "2007 letter" that says that Luke "would control 90 percent $SO_2$" (Lang Depo. at 77:2-77:16), that MDE has not yet approved any specific measures to achieve the 90% reduction at the Luke Mill (Lang Depo. at 79:3-80:4), that Lang believed the draft rule allowed flexibility for alternate measures to a scrubber on Power Boiler Number 25 (Lang Depo. at 80:11-81:14), that Ron Paugh contacted Lang during the comment period to express his concern that the proposed rule did not reflect that flexibility (Lang Depo. at 85:1-88:19), and that Lang was "not surprised" that Luke had concerns because the proposed rule did not reflect the flexibility asked for in the October 2007 letter and the "alternate measure" MDE requested (Lang Depo. at 87:16-90:14).

22.  The complete testimony of Mr. Lang is consistent with Mr. Paugh's testimony and the documentary evidence indicating that Luke did not commit to a particular technology to satisfy BART and that it sought to ensure that the Luke Mill would maintain flexibility in choosing the method of emissions reduction that would best fit the mill's needs. Def. RT Exh. 208 (Lang Depo.)  at 77:2-77:16, 79:3-80:4, 80:11-81:14, 85:1-90:14; 93:5-93:15, 121:5-121:10.

23.  Additionally, Luke has no obligation to take any action under the new $SO_2$ NAAQS and is not in violation of those standards.  Chinkin Tr. 12/13/12 at 66:24 – 67:23.

B.  **Installation of Emissions Control Technology: Timing**

1.  Installation of $SO_2$ control technologies at the Luke Mill is a complex process, expected to take between two to three years.  Contrary to the government's assertion in ¶¶ 3, 398 and 406 of the US PFOF, a timeframe of 12-18 months is not sufficient within which to realistically complete installation of $SO_2$ control technologies on a power boiler at the Luke Mill.  Paugh Tr. 1/18/13 at 40:15-47:1; 57:17:-65:7; Paugh Demonstrative No. 1.

2.  Contrary to the government's assertions at ¶¶ 443-445 of the US PFOF, additional study will be required to determine if changes are necessary to the existing system, such as potential upgrades to the induced draft fans, prior to installation of control equipment on the power boiler.  Paugh Tr. 1/18/13 at 48:20-49:2; 58:11-59:19.

II.  **PROPOSED CONCLUSIONS OF LAW**

A.  **Luke May Not be Held Liable for Any Violations Asserted Here**

1.  Contrary to the government's assertions in ¶¶ 3 and 402 of the US PFOF, Luke may not be held liable for Westvaco's violations of PSD at issue in this case.

8

2. Luke is not liable because it was not an owner or operator of the Luke Mill at the time of the PSD violations, it is not a successor to Westvaco's liability, and it did not assume liability for Westvaco's preconstruction obligations or PSD liability by contract. See further discussion in Luke's Proposed Findings of Facts and Conclusions of Law section II.A; see also, Memorandum and Order, April 7, 2011, Docket No. 279 at p.7, 10; United States v. Westvaco Corp., 144 F.Supp.2d 439, 441 (D.Md. 2001).

3. Relying on this court's decision in Westvaco, among others, federal courts have dismissed NSR claims against new owners, holding that there is simply no basis for the government to assert claims against a new owner for violations of NSR allegedly committed by a prior owner. United States v. Midwest Generation, LLC, 694 F.Supp.2d 999 (N.D.Ill. 2010); New York v. Niagara Mohawk Power Corp., 263 F.Supp.2d 650 (W.D.N.Y. 2003); U.S. v. EME Homer City Generation LP, 823 F.Supp.2d 274, 288 (W.D.Pa. 2011) (the "Current Owners  . . . cannot be held liable for injunctive relief because they did not violate the PSD program)."

4. Also, no remedy can be ordered against Luke here because there is no case or controversy against Luke as required by Article III of the Constitution and no claims for violation of law have been brought against it. Ostergren v. Cuccinelli II,  615 F.3d 263, 287-88 (4th Cir. 2010); Gibson v. Allstate Ins. Co., 64 Fed.Appx. 378, 2003 WL 21101723 (4th Cir. May 15, 2003); Gasner v. Board of Supervisors, 103 F.3d 351, 361 (4th Cir. 1996).

5. Joining a party pursuant to Rule 19(a) does not obviate the need to meet the requirements of Article III. Unite Here Local 1 v. Thor Equities, LLC, 2010 WL 2639691, * 3 (N.D.Ill. June 28, 2010). Pursuant to Rule 82, the Federal Rules of Civil Procedure "do not

extend or limit the jurisdiction of the district courts . . . ."  Fed.R.Civ.P. R. 82; <u>Unite Here</u>,

2010 WL 2639691 at * 3.  Joinder under Rule 19 is "not intended to circumvent Article III

jurisdiction."  <u>Hagerty Ins. Co. v. Cummings</u>, 2009 WL 1140034, * 3 (E.D.Mo. April 28,

2009).

    B.  **Balancing of the Equities**.

      1.  The remedy sought here is injunctive relief.  To that end, the Court must

engage in a balancing of the equities.[1] <u>Hunt Building Co. v. United States</u>, 61Fed. Cl. 243,

279-280 (Ct. Cl. 2004) (balancing interests of the parties, intervenor and third parties in

issuing injunctive relief); <u>Indian River Recovery Co. v. The China</u>, 645 F.Supp. 141 (D.De.

1986) (considering the harms to an intervenor in issuing injunctive relief).

      2.  Although the contractual agreement between Luke and Westvaco is not

before the Court for a determination as to the rights of the parties as between those parties

themselves, the plain language of the contract is properly before the Court for reference in

making its equitable determination in balancing the equities and in crafting its order for

injunctive relief.  <u>Monovis, Inc. v. Aquino</u>, 905 F.Supp. 1205, 1234-36 (W.D.N.Y. 1994)

(considering the business practices of the parties in crafting an order of injunctive relief).

      3.  Westvaco and the government argue, each for their own purposes, that the

Luke Mill will have to install a scrubber on the Number 25 Power Boiler anyway to satisfy its

future BART obligations.  However, if a BACT limit of .44 million pounds per BTU was

already in place on the Number 25 Power Boiler at the time the Luke Mill was required to

---

[1]   The court should reject Westvaco's proposed conclusion of law at WV PCOL ¶ 314 regarding what Westvaco "would do to the Mill today" to put the Mill in the position it would have been in had Westvaco not violated the Clean Air Act because that testimony was already stricken at trial.  WV PCOL ¶ 314 (citing Thorp Tr. 1/15/13 at 28:10-24); Thorp Tr. 1/15/13 at 121:6 -126:7.

undertake its BART analysis in 2010, and a scrubber was already operating on the Number 25

Power Boiler, Luke would not have "had to" install *any* additional controls to comply with

BART.  Burke Tr. 1/14/13 at 164:23- 165:3.

## **CONCLUSION**

Luke takes no position as to whether a BACT remedy should be ordered as a

result of the violations the Court has found to exist in this case.  To the extent such a remedy is

ordered, however, Luke should not be made to shoulder the burden of that remedy, allowing

others to benefit from the protracted resolution of this litigation.

Dated:  April 12, 2013

*Attorneys for Luke Paper Company*


/s/ Sami B. Groff

_____

Howard B. Epstein
Sami B. Groff
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York  10022
(212)756-2000


_____

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2013, a true and correct copy of the foregoing

INTERVENOR LUKE PAPER COMPANY'S REPLY TO PLAINTIFF UNITED STATES'

AND DEFENDANT WESTVACO'S PROPOSED FINDINGS OF FACT AND

CONCLUSIONS OF LAW  was filed using the Court's electronic case filing system, which

results in service on all counsel of record registered on the case management/electronic filing

("CM/ECF") system.


_____/s/ Sami B. Groff
Sami B. Groff