THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| Plaintiff | * | |
| vs. | * | CIVIL ACTION NO. MJG-00-2602 |
| WESTVACO CORPORATION | * | |
| Defendant | * | |

*       *       *       *       *       *       *       *       *

<u>MEMORANDUM AND ORDER APPROVING CONSENT DECREE</u>

The Court has before it the United States' Motion to Enter Proposed Consent Decree [ECF No. 438] and the materials relating thereto.  The Court has held a hearing and has had the benefit of the arguments of counsel.

I.    <u>BACKGROUND</u>

   A.    <u>Case Summary</u>[1]

   In 1981, Westvaco Corporation ("Westvaco"),[2] operator of a kraft pulp and paper mill ("the Luke Mill") located in Maryland and West Virginia, decided to proceed with a major expansion project without obtaining a permit that this Court found to be

---

[1]    More detailed statements of background are found in the Memorandum of Decision Re: First Phase [ECF No. 230], the Background Statement Re: Pending Summary Judgment Motions [ECF No. 324], and Memorandum of Decision – Remedy Phase [ECF No. 410].
[2]    Reference to "Westvaco" herein is intended to include Westvaco Corporation and all predecessors in regard to the operation of the Luke Mill.

required.  Consequently, for some thirty years, the Luke Mill emitted more pollutants than this Court found that it should have.[3]

The Environmental Protection Agency ("EPA") did not commence the instant law suit until the year 2000.  The Government claimed civil penalties and sought to have the Court impose pollution control obligations upon Westvaco due to its violation of the Clean Air Act ("CAA").  However, the Court held that the delay caused the Government to lose its ability to collect penalties from Westvaco.

There was a 2005 sale of the Luke Mill by Westvaco to Luke Paper Company[4] ("LPC") that continued to operate the mill.  This required the Court to consider the effect upon LPC of any mandatory injunction requiring Westvaco to acquire control equipment and install it on the premises.  Consequently, LPC was added as an Intervenor to participate in proceedings regarding relief that could affect its operations.

Ultimately, the Court decided that it would not be able to issue an injunction that would require Westvaco to install

---

[3]    The Court has not determined the precise amount of excess emissions.  Mem. Of Decision – Remedy Phase at 21, ECF No. 410.
[4]    A fully-owned subsidiary of NewPage Corporation ("NewPage").

control equipment at the Luke Mill and would, instead, impose an obligation to mitigate the harm caused by the excess emissions. An evidentiary hearing was scheduled but, prior thereto, the parties engaged in settlement proceedings with a Magistrate Judge.  The proceedings resulted in the proposed Consent Decree [ECF No. 435-1] resolving all issues between Westvaco and the Government.  There were no pending claims by or against LPC, and it was not a party to the agreement.

In accordance with 28 C.F.R. § 50.7, the Government sought public comment on the Consent Decree by publishing a notice in the Federal Register.  <u>See</u> 81 Fed. Reg. 14,130 (Mar. 16, 2016). A comment by the Pennsylvania Department of Environmental Protection [ECF No. 438-1] and an objection by LPC [ECF No. 436] were received.

By the instant motion, the Government (with the agreement of Westvaco) requests the Court to enter the Consent Decree as an Order of the Court.


B.   <u>The Consent Decree</u>

As summarized by the Government in its supplemental memorandum:

The proposed Consent Decree would require Westvaco to pay $1.6 million, split equally between the National Park Service and the U.S. Forest Service. This money would be used to fund projects in Shenandoah National Park and the Monongahela National Forest to address harm from acidic deposition.

The Decree would require that the funds be used "in accordance with 54 U.S.C. § 100724 for the restoration of land, watersheds, vegetation, and forests in Shenandoah National Park" and "16 U.S.C. § 579c for the improvement, protection, and rehabilitation of lands in the Monongahela National Forest." While the Decree does not require the implementation of any specific projects, it is anticipated that the money paid to the National Park Service would be used on the following types of projects: []

| Project Type | Location | Approximate Cost |
|---|---|---|
| Watershed liming to address acidification in soils, forests, and aquatic systems | North Fork of Dry Run and Meadow Run in Shenandoah National Park | $300–500 per acre |
| Repairing culverts to increase habitat resiliency so organisms in impaired ecosystems are better able to withstand stress from acidification | Throughout Shenandoah National Park | $3,000–$15,000 per culvert |

| | | |
|---|---|---|
| Decommissioning of roads near acid-impacted watersheds and revegetation and reforestation of those areas to improve their ability to buffer acid impacts | Throughout Shenandoah National Park | $11,000 per 100 feet of road removal and revegetation |
| Application of limestone gravel to roads as a method of delivering base cations to impaired watersheds | Throughout Shenandoah National Park | $1,300 per mile |

It is anticipated that the money paid to the U.S. Forest Service would be used on some combination of two projects to improve soils, watersheds, and aquatic resources in the Monongahela National Forest. One project would involve adding lime to soils in the Lower William River watershed, located in the southeastern portion of the Monongahela National Forest. This would involve the application of limestone sands in a 797-acre area in the Lower William River Watershed. The estimated cost of this project is $407,000. The other project would involve restoring habitat in the Upper Greenbriar, Little River, and Big Run watersheds in the Monongahela National Forest. This would involve decommissioning roads, rehabilitating stream crossings, improving hillsides to reduce erosion and sediment production, reducing habitat fragmentation by removing stream barriers, rehabilitating floodplain functions, and/or replanting riparian areas. While the estimated cost for this work exceeds the amount of the settlement proceeds, the project is scalable.

Mem. in Support of Mot. at 7-8, ECF No. 438-1 (quoting Decree at ¶¶ 7 and 9).

Westvaco has signed and approved the Consent Decree, consenting to its entry without further notice.  The Government conditioned its approval on the public notice and comment procedure as required under 28 C.F.R. § 50.7.  The 30-day public comment period has expired with one comment being received in addition to the objection by LPC.

### 1.   The Comment

The Pennsylvania Department of Environmental Protection filed a comment, asking the Department of Justice to "consider allotting a portion of the mitigation moneys to projects within Pennsylvania that will reduce harmful air emissions on an ongoing basis into the future."  Id. Ex. A.

### 2.   LPC's Objection

In 2005, LPC became the owner and operator of the Luke Mill.[5]  In the Westvaco-LPC Equity and Asset Purchase Agreement (the "Purchase Agreement"), Westvaco retained responsibility for

---

[5]    On September 7, 2011, LPC's parent corporation, NewPage (and its subsidiaries including LPC), filed for protection under Chapter 11 of the United States Bankruptcy Code.

the design, construction, and installation of any controls determined to be required as a result of this litigation.[6]

As discussed in the Memorandum and Order Re: Motion to Join [ECF No. 279], the Court found it appropriate to add LPC as a party - Intervenor (not defendant).  Status as a party enabled LPC to participate in proceedings regarding matters relating to remedies pertaining to the ongoing operation of the Luke Mill.

LPC does not object to the settlement to the extent that it resolves all issues between Westvaco and the Government. However, it objects to the settlement's not resolving potential claims that may be made against LPC.  That is, "the possibility that the parties might bring new claims against [LPC] arising out of the same facts alleged in the instant complaint." Objection at 4, ECF No. 436.  LPC is not a party to the Consent Decree and was not involved in the negotiation of its terms.

Specifically, LPC objects to paragraph 18 of the Consent Decree, which states that "it does not limit or affect the

---

[6]     LPC had the obligation to operate such controls, but assumed no responsibility with respect to the defense or resolution of the action, specifically agreeing to not interfere in any way with Westvaco's defense or resolution of the litigation.  On November 12, 2013, the Bankruptcy Court approved a settlement of adversary proceedings between Westvaco and NewPage, which provided for the rejection of certain aspects of the Purchase Agreement.

rights of Westvaco or of the United States against any third

parties, not party to this Consent Decree . . ." Id. (quoting

Proposed Consent Decree, ECF No. 435-1).

During the course of this litigation, the Government has

argued that LPC could be held liable for violations of the CAA.

The Court has not agreed with the Government.  See Mem. and

Order Re: Motion to Join [ECF No. 279] at 7.[7]

LPC seeks to have the Consent Decree carve it out of the

paragraph 18 language by adding language clarifying that no

future claims will be asserted against LPC arising out of or

related to the facts alleged in the complaint.  LPC also

requested the parties include language that clarified that it

constitutes a final judgment as to all parties, including LPC as

Intervenor.

Specifically, LPC requests that the Court decline to

approve the proposed Consent Decree unless it is amended by:

---

[7]     The Government also argued that Westvaco's failure to
obtain the required preconstruction permits were a continuing
violation for statute of limitations purposes, but this Court
held "that the statute of limitations bars the Government from
bringing claims based on preconstruction permit violations where
the construction was completed more than five years prior the
commencement of the lawsuit." United States v. Westvaco Corp.,
144 F. Supp. 2d 439, 444 (D. Md. 2001).

- Adding the following language to the end of paragraph 18: ', except that the Parties shall not bring any claims or actions against Luke Paper Company or its affiliates relating to or arising out of the violations alleged in the Complaint.'"  Objection at 9, ECF No. 436, and

- that the following language be added to the end of paragraph 29: "and a final determination as to all issues addressed by the prior rulings and orders in this case, which shall have res judicata and collateral estoppel effect with respect to future claims against all parties to this action, including Intervenor Luke Paper Company, related to or arising out of the violations alleged in the Complaint." <u>Id.</u> at 11.

In the alternative, LPC requests that the Court include similar clarifying language in its order approving the Consent Decree.  <u>Id.</u>  Specifically, LPC requests that the Court's Order state:

> IT is further ORDERED that the Consent Decree constitutes a final judgment as to all parties including Intervenor Luke Paper Company and that this Court's previous rulings in this case with respect to Luke, or related to or arising out of the violations alleged in the Complaint as they relate to Luke: (i) constitute final determinations, (ii) which decisions were actually determined and supported with reasoned opinions, (iii) with respect to which the parties had a full and fair opportunity to be heard and (iv) which were subject to appeal.

(Revised) (Proposed) Order Granting Motion to Enter Consent Decree, ECF No. 447-5.

## II.   LEGAL STANDARD

"[A] consent decree 'has elements of both judgment and contract,' and is subject to 'judicial approval and oversight' generally not present in other private settlements." Szaller v. American Nat. Red Cross, 293 F.3d 148, 152 (4th Cir. 2002) (quoting Smyth v. Rivero, 282 F.3d 268, 279-80 (4th Cir. 2002)). Because a consent decree is entered as an order of the court, its terms must be examined by the court to ensure that they are fair and lawful.   Smyth, 282 F.3d at 280.

"The presumption in favor of settlement is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency specially equipped, trained, or oriented in the field. EPA is such an agency." United States v. City of Welch, W. Va., Civ. No. 1:11-00647, 2012 WL 385489, at *2 (S.D.W.Va. Feb. 6, 2012)(quoting United States v. Cannons Eng'g Corp., 720 F. Supp. 1027, 1035 (D. Mass. 1989)).

However, anyone objecting to a consent decree should be heard.   Flinn v. FMC Corp., 528 F.2d 1168, 1172-73 (4th Cir. 1975).   To reach an informed, just, and reasoned decision regarding a consent decree, the court should review testimony at a hearing and consider other evidence in the record.   Maryland,

Dep't of the Env't v. GenOn Ash Mgmt., LLC, No. CIV. PJM 10-
0826, 2013 WL 2637475, at *1-2 (D. Md. June 11, 2013)(citing
Flinn, 528 F.2d at 1175).

The Fourth Circuit has further explained:

> In considering whether to enter a proposed
> consent decree, a district court should be
> guided by the general principle that
> settlements are encouraged. Nevertheless, a
> district court should not blindly accept the
> terms of a proposed settlement. Rather,
> before entering a consent decree the court
> must satisfy itself that the agreement is
> fair, adequate, and reasonable and is not
> illegal, a product of collusion, or against
> the public interest. In considering the
> fairness and adequacy of a proposed
> settlement, the court must assess the
> strength of the plaintiff's case. While this
> assessment does not require the court to
> conduct a trial or a rehearsal of the trial,
> the court must take the necessary steps to
> ensure that it is able to reach an informed,
> just and reasoned decision. In particular,
> the court should consider the extent of
> discovery that has taken place, the stage of
> the proceedings, the want of collusion in
> the settlement and the experience of
> plaintiffs' counsel who negotiated the
> settlement.

United States v. N. Carolina, 180 F.3d 574, 581 (4th Cir.
1999)(citations omitted).


III. DISCUSSION

Public policy favors the settlement of disputes without
unnecessary litigation. Id. at 581.  A discussed herein, the

Court is satisfied that the agreement is the result of a good faith negotiation that is fair, adequate, reasonable, and in the public's best interest.

    A.   Assessment of Agreement

    The Court turns first to the issue of fairness and reviews whether the Consent Decree is procedurally and substantively fair.  See United States v. Cannons Eng'g Corp., 899 F.2d 79, 86 (1st Cir. 1990).  The Consent Decree was reached with the assistance of a magistrate judge through an arms-length negotiation by Westvaco and the Government.  Counsel for both parties are experienced and well-versed in the issues of this specific litigation as well as CAA enforcement cases generally. The agreement was reviewed and approved by Westvaco's management as well as the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice, the EPA Region III Administrator, and the Director of EPA's Office of Civil Enforcement.  Certainly, the agreement is lawful, and there is nothing to indicate that the agreement was a product of collusion.

    The Consent Decree was entered into after the Court had determined that Westvaco was liable for the CAA violations at

issue but would not be required to install pollution controls at the Luke Mill.  Westvaco and the Government had pursued discovery related to remedies for mitigating the harm caused by Westvaco's violation.  The agreement reached by the parties results in Westvaco paying $1.6 million to fund projects that will address the harm in areas that suffered from the excess emissions.

Had the case proceeded through the scheduled evidentiary hearing, the Court would have required Westvaco to pay an amount determined by the Court for remedial actions.  This is the result achieved by the Consent Decree.  The Court finds no principled basis upon which to find that the agreed amount of $1,600,000 is not within the range of reasonableness.  Moreover, the agreement provides for prompt remedial actions and avoids the delay and uncertainty of appellate proceedings.[8]

---

[8]    It is apparent that both the Government and Westvaco would have appealed from the Court's decision and, it also appears that both would have presented non-frivolous contentions in support of their respective positions.

B.    Public Comment & Objection

1.    The Comment

The Pennsylvania Department of Environmental Protection
submitted the only public comment concerning the proposed
Consent Decree.  It asked that a portion of the mitigation
moneys to be allotted to projects in Pennsylvania.

The Government asserts that it did consider allotting a
portion of settlement proceeds to projects in Pennsylvania as
well as other states but ultimately determined that funding
projects in Shenandoah National Park and the Monongahela
National Forest would be the most appropriate allocation of
funds.  Westvaco takes no position as to where and how the funds
it will provide are to be used.

The Court finds no principled basis upon which to question
the Government's decision regarding the use of the funds.


2.    The Objection

Both Westvaco and the Government disagree with the
modifications sought by LPC.  They contend that the Court does
not have authority to modify the Consent Decree absent their
agreement but only can approve or disapprove it.  In the instant
case, the issue is moot because the Court finds no reason to

require, if it could, that Westvaco and the Government agree to LPC's request.

Initially, the Court notes that in July 2016, LPC has emerged from another bankruptcy proceeding, and neither Westvaco nor the Government has timely filed any claim.  LPC's new parent company, Verso Corporation, and its subsidiaries including LPC filed for Chapter 11 bankruptcy on January 26, 2016.  In re Verso Corp., Case No. 16-10163 (Bankr. Del. 2016).  LPC has not asserted the stay in this action given the Court's rulings that the remedy will not impact the Luke Mill and given the current settlement posture.  The claims bar date, April 29, 2016, has now passed with no claims being lodged by Westvaco or the Government.  Hence, it appears likely that LPC has had all prepetition claims against it discharged.

In any event, the Court finds that the public interest would not be served, but would be disserved, by including the provisions that LPC seeks in the Consent Decree.

There is absolutely no doubt that LPC should not receive immunity for violations of pollution-related laws or regulations.  Yet, the provisions LPC seeks would prohibit the Government from asserting claims for violations related to, or arising out of, the violations alleged in the Complaint.  This

Court will not prohibit the Government from asserting claims against LPC for violating pollution-related laws or regulations, even if such claims are "related to, or arising out of" the violations alleged in the Complaint. LPC would, of course, be entitled to assert that the Government may not assert such claims by virtue of rulings made by the Court in the instant case. However, it will not be entitled to violate pollution-related laws or regulations by virtue of a provision in the Consent Decree to which neither of the consenting parties agree.

IV.   CONCLUSION

For the foregoing reasons:

1.   The United States' Motion to Enter Proposed Consent Decree [ECF No. 438] is GRANTED.

2.   The Court shall enter its approval of the Consent Decree by separate Order.

SO ORDERED, on Friday, August 26, 2016.


_____/s/_____
Marvin J. Garbis
United States District Judge

16